# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Summer Michelle Rollins, | Case No. 14-cv-299 (SRN/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of Albert Lea; Anoka County; City of Anoka; City of Blaine; City of Breezy Point; City of Brooklyn Park; City of Champlin; City of Coon Rapids; Dakota County; City of Elk River; Hennepin County; City of Howard Lake; City of Maplewood; City of Minnetonka; City of Mora; City of North St. Paul; City of Ramsey; Ramsey County; City of Rogers; City of Roseville; Sherburne County; City of St. Paul; Washington County;  Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-600) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; and Entity Does (1-50) including cities, counties, municipalities, and other entities sited in Minnesota, | |
| Defendants. | |

Lorenz F. Fett, Jr., Sonia L. Miller-Van Oort, Jonathan A. Strauss, Sapientia Law Group PLLC, 12 South 6th Street, Suite 1242, Minneapolis, MN 55402, for Plaintiff.

Jon K. Iverson, Stephanie A. Angolkar, Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Ave S., Bloomington, MN 55438, for Defendants City of Albert Lea, City of Anoka, City of Blaine, City of Breezy Point, City of Brooklyn Park, City of Champlin, City of Coon Rapids, City of Elk River, City of Howard Lake, City of Maplewood, City of Minnetonka, City of Mora, City of North St. Paul, City of Ramsey, City of Rogers, and City of Roseville.

Bryan D. Frantz, Anoka County Attorney's Office, 2100 3rd Ave, Anoka, MN 55303, for Defendant Anoka County.

Amelia N. Jadoo and Helen R. Brosnahan, Dakota County Attorney's Office, 1560 Highway 55, Hastings, MN 55033, for Defendant Dakota County.

Toni A. Beitz, Beth A. Stack, and Daniel D. Kaczor, Hennepin County Attorney's Office, 300 South 6th Street, Suite A-2000 and Suite C-2000, Minneapolis, MN 55487, for Defendant Hennepin County.

Kimberly R. Parker and Robert B. Roche, Ramsey County Attorney's Office, 121 Seventh Place East, Suite 4500, St. Paul, MN 55101, for Defendant Ramsey County.

Erin E. Benson, Margaret A. Skelton, Timothy A. Sullivan, Ratwik, Roszak & Maloney PA, 730 2nd Ave South, Suite 300, Minneapolis, MN 55402, for Defendants Sherburne County and Washington Counties.

Kara M. Kisch, Office of the St. Paul Attorney, 750 Courthouse and City Hall, 15 West Kellogg Blvd, St. Paul, MN 55102, for Defendant City of St. Paul.

Oliver J. Larson, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134, for Defendants Michael Campion and Ramona Dohman.

---

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on the following motions: (1) Defendant Hennepin

County's Motion to Dismiss and/or to Sever [Doc. No. 19]; (2) Defendants City of Albert

Lea, City of Anoka, City of Blaine, City of Breezy Point, City of Brooklyn Part, City of

Champlin, City of Coon Rapids, City of Elk River, City of Howard Lake, City of

Maplewood, City of Minnetonka, City of Mora, City of North St. Paul, City of Ramsey,

City of Rogers, and City of Roseville's Motion to Dismiss and/or Sever [Doc. No. 25];

(3) Defendant Ramsey County's Motion to Dismiss or for Severance [Doc. No. 31]; (4)

Defendant City of St. Paul's Motion to Dismiss or Alternatively to Sever [Doc. No. 36];

Defendant Dakota County's Motion to Dismiss [Doc. No. 46]; (5) Defendant Anoka

County's Motion to Dismiss [Doc. No. 60]; (6) Defendants Sherburne and Washington

Counties' Motion to Dismiss and/or to Sever [Doc. No. 73]; and (7) Defendants

Commissioner Ramona Dohman and Commissioner Michael Campion's Motion to

Dismiss [Doc. No. 79].  For the reasons set forth below, the Court denies in part and

grants in part these motions.

## II.    BACKGROUND

Plaintiff Summer Michelle Rollins ("Plaintiff" or "Rollins") filed this action on

January 31, 2014 against the municipal, county, and individual Defendants listed above.

(See Compl. [Doc. No. 1].)  In Count I of her Complaint, Plaintiff asserts a claim under the

Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, et seq., against all

Defendants.  (Id. ¶¶ 311-33.)  In Count II, Plaintiff brings a claim under 42 U.S.C. § 1983

against all individual Defendants, including Jane and John Does.  (Id. ¶¶ 334-51.)  In Count

III, Plaintiff states an additional claim under 42 U.S.C. § 1983 against all entity Defendants

and supervisor Defendants, including John and Jane Entity Does.  (Id. ¶¶ 352-74.)  In Count

IV, Plaintiff asserts a 42 U.S.C. § 1983 claim against the Commissioner Defendants and the

Minnesota Department of Public Safety ("DPS") Does.  (Id. ¶¶ 375-92.)  Finally, in Count

V, Plaintiff brings a claim for common law invasion of privacy against all Defendants.  (Id. ¶¶ 393-98.)

Plaintiff's claims are centered on allegations that law enforcement personnel viewed her private driver's license information in the Minnesota Department of Vehicle Services ("DVS") driver's license database and the Bureau of Criminal Apprehension ("BCA") database without a legitimate purpose.  (See id. ¶¶ 1, 6, 56-291.)  Specifically, Plaintiff alleges that law enforcement personnel may have accessed her personal information because Rollins has a tenuous relationship with family members who work or worked for the DPS and various police forces.  (Id. ¶¶ 47-52.)  Plaintiff's mother works for the DPS.  (Id. ¶ 47.)  Rollins and her mother have allegedly had a "tenuous relationship since . . . [Rollins' mother] kicked Rollins out of the house at age 15."  (Id. ¶ 49.)  Plaintiff's uncle, Ken Rollins, was a police office in Elk River and Mora, and is currently an officer in Howard Lake.  (Id. ¶ 48.)  Rollins' "other family members" have also served, or continue to serve, as law enforcement officers within the state of Minnesota.  (Id.)  Plaintiff alleges that her mother and uncle "dislike" Plaintiff because they disapproved of Plaintiff's divorce.  (Id. ¶ 50.)  Although Plaintiff does not communicate with either her mother or her uncle (id. ¶ 54), Rollins believes that they, and other family members, as well as those government employees who associate with these family members, "have been obtaining, using, or disclosing [Rollins'] information for . . . [illegitimate purposes]" (id. ¶ 55).

In 2013, Plaintiff contacted Kim Jacobson at the DPS and requested an audit of the number of times her name was run on the DVS and BCS databases.  (Id. ¶¶ 249-53.)  On August 7, 2013, Rollins alleges that she learned from the DPS that officers from various

departments and agencies accessed her driver's license information 574 times since 2003. (Id. ¶¶ 251-53; see Ex. A; Ex. B [Doc. No. 1-1].)  The chart below itemizes the number of lookups allegedly made by each Defendant for a purpose not permitted under the DPPA:

| Entity | Number of times accessed |
|---|---|
| Hennepin County | 9 (Compl. ¶ 109 [Doc. No. 1].) |
| City of Albert Lea | 1 (id. ¶ 69.) |
| City of Anoka | 3 (id. ¶ 77.) |
| City of Blaine | 1(id. ¶ 81.) |
| City of Breezy Point | 57 (id. ¶ 85.) |
| City of Brooklyn Park | 1 (id. ¶ 89.) |
| City of Champlin | 1 (id. ¶ 93.) |
| City of Coon Rapids | 7 (id. ¶ 97.) |
| City of Elk River | 7 (id. ¶ 105.) |
| City of Howard Lake | 26 (id. ¶ 113.) |
| City of Maplewood | 125 (id. ¶ 117.) |
| City of Minnetonka | N/A (id. ¶ 121)[1] |
| City of Mora | 8 (id. ¶ 125.) |
| City of North St. Paul | 48 (id. ¶ 129.) |
| City of Ramsey | 25 (id. ¶ 133.) |
| City of Rogers | 10 (id. ¶ 141.) |
| City of Roseville | 12 (id. ¶ 145.) |
| City of St. Paul | 12 (id. ¶ 153.) |
| Dakota County | 2 (id. ¶ 101.) |
| Anoka County | 95 (id. ¶ 73.) |
| Sherburne County | 30 (id. ¶ 149.) |
| Washington County | 24 (id. ¶ 157.) |
| Ramsey County | 5 (id. ¶ 137.) |

---

[1]     Plaintiff failed to include the number of alleged times City of Minnetonka officers accessed her personal information.  This failure is likely a typographical error in paragraph 121 of the Complaint.  (Id. ¶ 121.)  However, the Court deduces that Plaintiff intended to allege that City of Minnetonka officers accessed Rollins' private data 65 times.  This calculation is based on subtracting the number of times all Defendant entities other than the City of Minnetonka, accessed Plaintiff's data (509), from the absolute total number of lookups alleged (574).  (Id. ¶ 161.)  The Court orders Plaintiff to amend her Complaint within 30 days to correct this typographical error and formally allege the number of times City of Minnetonka officers accessed her personal data.

Plaintiff alleges that the searches detailed above were not based on any legitimate law-enforcement, governmental, judicial, or litigation-related purpose.  (Compl. ¶¶ 74, 255 [Doc. No. 1].)  Rather, Rollins claims that these inquiries were a result of governmental employees' curiosity about, or romantic attraction to, Rollins.  (Id. ¶ 255.)  In fact, before filing suit, Plaintiff requested Entity Defendants "to provide her with any permissible reason it or its employees, agents, and officers had in looking up her information," but Defendants allegedly "never provided any legitimate permissible reason."  (Id. ¶ 258.)

Plaintiff describes the driver's license information at issue.  She alleges that individual Defendants viewed the following private information: "home address, color photograph or image, date of birth, eye color, height, weight, driver's identification number, and upon information and belief, medical and social security information."  (Id. ¶ 164.)  The Court held oral argument on all of the aforementioned motions on June 19, 2014 [Doc. No. 94].[2]

## III.   DISCUSSION

### A.   Standard of Review

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  Defendant Dakota County also moves for judgment on the pleadings pursuant to Rule 12(c).  When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light

---

[2]    The Court earlier ordered that, based on the parties' stipulation, it would rule on the Defendant Commissioners' motion based on the parties written submissions, without oral argument.  (05/28/2014 Order at 1 [Doc. No. 86].)

most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  See Fed. R. Civ. P. 12(d).  The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records, Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).[3]

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550

---

[3]     Attached to her Complaint, Plaintiff submitted a copy of an audit prepared by the DPS showing individual accesses of Plaintiff's driver's license information by name, and showing the "station" through which the officer obtained her information via the DVS database.  (Compl., Ex. A [Doc. No. 1-1].)  Plaintiff also attached an undecipherable list of accesses via the BCA database system.  (Compl., Ex. B [Doc. No. 1-1].)  The Court references these documents as needed throughout the Order.  Additionally, Rollins and Defendants submitted public records or reports by government agencies.  (See, e.g., Kaczor Aff., Ex. 1 "Law Enforcement's Use of State Databases" [Doc. No. 23-1].)  The Court also relies upon these public records throughout this Order.

U.S. at 556.  These same standards apply to a motion for judgment on the pleadings under

Fed. R. Civ. P. 12(c).  Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009);

Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012).

### B.      Plaintiff's Claims

Plaintiff has failed to state cognizable claims in Counts II through V of her

Complaint, and the applicable statute of limitations bars some of Plaintiff's Count I

claims asserted against Defendants who submitted Motions to Dismiss.  Below, the Court

begins by addressing Plaintiff's § 1983 and intrusion upon seclusion claims against all

Defendants.  The Court then proceeds by addressing Plaintiff's DPPA claims against

each Defendant individually.

### 1.   Counts II, III, IV: Section 1983 Claims

Counts II, III, and IV of Plaintiff's Complaint state causes of action under 42 U.S.C.

§ 1983.  (Compl. ¶¶ 334-92 [Doc. No. 1].)  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State . . . , subjects, or causes to be subjected, any citizen of
> the United States . . . to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . . .

In Count II, Plaintiff alleges that the unnamed individual Defendants in this lawsuit, acting

under color of state law, violated her statutory rights under the DPPA, her constitutional

rights under the Fourth and Fourteenth Amendments, and her rights under the laws of the

State of Minnesota.  (See Compl. ¶¶ 334-51.)  In Count III, Plaintiff alleges that the entity

and supervisor Defendants are liable for the unnamed individual Defendants' custom and

9

practice of improperly accessing information; their own failure to monitor and enforce the rules; and their failure to train, supervise, and impose proper discipline.  (<u>See</u> <u>id.</u> ¶¶ 352-74.) In Count IV, Rollins alleges that the Defendant Commissioners and the DPS Does are liable under § 1983 for creating, maintaining, and providing access to the database that included Rollins' private data.  (<u>See</u> <u>id.</u> ¶ 375-392.)

The Defendants in this case assert numerous arguments in opposition to Plaintiff's § 1983 claims.  First, they argue that the § 1983 claims are barred by the applicable statute of limitations.  (<u>See, e.g.</u>, Def. Hennepin County's Mem. at 11 [Doc. No. 22].)  Second, they argue that Plaintiff's § 1983 claims based on their alleged DPPA violations fail because the DPPA is not separately enforceable under § 1983.  (<u>See</u> <u>id.</u> at 18-19.)  Third, Defendants assert that Plaintiff's § 1983 claims based on alleged violations of her constitutional rights fail because Plaintiff has not stated a legally-cognizable deprivation of a constitutional right. (<u>See</u> <u>id.</u> at 19-20.)  Finally, Defendants argue that Rollins' § 1983 claims based on violations of Minnesota law fail because § 1983 cannot be used to enforce state law.  (<u>See</u> <u>id.</u> at 19, n.3.)  Because the Court agrees with Defendants' latter three arguments, each of which is dispositive, it declines to address the statute of limitations issue as it applies to Plaintiff's § 1983 claims.

### a.   DPPA basis

Plaintiff's § 1983 claims fail to the extent that they are based on alleged violations of the DPPA.  The reasoning that follows echoes this Court's holding in <u>Rasmussen v. Chisago County, et al.</u>, 991 F. Supp. 2d 1065, 1072-74 (D. Minn. 2014).

As noted above, a plaintiff may generally use § 1983 to enforce federal statutory rights.  In order to determine "whether a statute creates an individually enforceable federal right," a plaintiff must demonstrate that "'(1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states.'"  Midwest Foster Care & Adoption Ass'n v. Kincade, 712 F.3d 1190, 1195 (8th Cir. 2013) (citation omitted).  A statute that meets these criteria is presumed to be enforceable under § 1983.  Id. at 1195–96 (citing Blessing v. Freestone, 520 U.S. 329, 341 (1997)).  However, "[a defendant] can rebut this presumption by showing either that Congress explicitly foreclosed a remedy under § 1983 or implicitly did so, 'by creating a comprehensive enforcement scheme that is incompatible with individual enforcement'" under § 1983.  Id. at 1196 (quoting Blessing, 520 U.S. at 341); see Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) ("Courts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive.").  According to the United States Supreme Court, "a private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983."  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 121 (2005) (citations omitted).

Even if Plaintiff was able to demonstrate that the DPPA constitutes a protectable "right" under the relevant three-prong test and, therefore, that it is presumptively enforceable under § 1983, that presumption is rebutted because Congress has explicitly foreclosed a remedy under § 1983 by creating a comprehensive DPPA enforcement scheme.

11

The DPPA makes the following remedies available in a civil action:  (1) actual damages (not less than liquidated damages of $2,500); (2) punitive damages; (3) reasonable attorneys' fees and costs; and (4) other appropriate equitable relief.  See 18 U.S.C. § 2724(b).  It also provides for criminal fines and civil penalties.  Id. § 2723.

In addition, the private remedy contained in the DPPA's comprehensive enforcement scheme is more restrictive than that provided under § 1983, in terms of the category of persons from whom a plaintiff may seek a remedy and the period of time in which a plaintiff may seek a remedy.  First, like the DPPA, § 1983 allows for recovery of damages and injunctive relief, as well as costs and a reasonable attorney's fee, in a private cause of action.  See 42 U.S.C. §§ 1983, 1988(b).  However, while an individual may seek injunctive relief under § 1983 against a state official acting in his official capacity, the DPPA expressly precludes civil suits against states and state agencies.  See Heartland Academy Community Church v. Waddle, 427 F.3d 525, 530 (8th Cir. 2005) (finding, in a § 1983 case, that there is an exception to sovereign immunity for state officials acting in their official capacity "where the relief sought is prospective and not compensatory"); 18 U.S.C. § 2724(a) (stating that a "person" who violates the Act shall be liable); id. § 2725(2) (stating that, for purposes of the DPPA, "'person' means an individual, organization or entity, but does not include a State or agency thereof").

Second, as discussed in more detail below, DPPA claims are subject to a four-year statute of limitations.  On the other hand, § 1983 actions "brought in Minnesota are subject to a six-year statute of limitations."  See McKenzie v. Fabian, No. 08-cv-164 (PAM/JSM), 2008 WL 5122118, at *7 (D. Minn. Nov. 21, 2008) report and recommendation adopted,

No. 08-cv-164(PAM/JSM), 2009 WL 259726 (D. Minn. Feb. 3, 2009) aff'd, 359 F.

App'x 684 (8th Cir. 2010) (citing Egerdahl v. Hibbing Community College, 72 F.3d 615,

618, n.3 (8th Cir. 1995)).  Thus, allowing Plaintiff to pursue her DPPA claims through §

1983 would allow her to enlarge the applicable statute of limitations.  Accordingly, the

DPPA cannot be enforced through § 1983.

This Court's determination that Plaintiff may not use § 1983 to enforce her rights

under the DPPA aligns with decisions from several other courts, including multiple

district courts within the United States Court of Appeals for the Eighth Circuit.  See, e.g.,

Roberts v. Source for Public Data, 606 F. Supp. 2d 1042, 1046 (W.D. Mo. 2008)

(dismissing plaintiffs' claim because, "[g]iven [the DPPA's] comprehensive remedial

scheme, the [c]ourt must presume that Congress intended that the enforcement scheme it

created in the DPPA would be the exclusive remedy for violations, precluding resort to §

1983"); Nelson v. Jesson, No. 13-cv-340 (RHK/JJK), 2013 WL 5888235, at *7 (D. Minn.

Nov. 1, 2013) (noting that "the DPPA's remedial scheme, which is both comprehensive

and more restrictive than § 1983, expresses Congress's intent to preclude other means of

enforcement," and therefore, finding that state officials acting in their official capacity

cannot be held liable for injunctive relief under the DPPA); see also Kiminski v. Hunt,

No. 13-cv-185 (JNE/TNL), 2013 WL 6872425, at *14 (D. Minn. Sept. 20, 2013) (holding

that the DPPA precludes a § 1983 action because the inability to sue state officials in

their official capacity under the DPPA is "significant, especially in light of the statute's

overall comprehensive remedial scheme.").

13

Plaintiff urges the Court to follow two cases in which the courts have determined that the DPPA is separately enforceable under § 1983:  Collier v. Dickinson, 477 F.3d 1306 (11th Cir. 2007), and Arrington v. Richardson, 660 F. Supp. 2d 1024 (N.D. Iowa 2009).  (See Pl.'s Resp. to Def. Ramsey County at 21-24 [Doc. No. 57].)  In Collier, the Eleventh Circuit Court of Appeals determined that the relief provided under the DPPA and § 1983 is "complementary" rather than "conflicting."  477 F.3d at 1311.  The court did not examine the nature of the available remedies; instead, it merely stated generally that the DPPA did not create so many statutory remedies as to make it unlikely that Congress intended to preserve a § 1983 claim.  Id.  In Arrington, the U.S. District Court for the Northern District of Iowa similarly found that the remedial schemes of the two statutes are complementary.  660 F. Supp. 2d at 1035.  In fact, that court found that the DPPA actually provides "more extensive" remedies than those available under § 1983. Id. at 1032.  Thus, the court noted that Congress did not preclude a plaintiff from obtaining a remedy under the DPPA that is otherwise available under § 1983.  Id. at 1035.

This Court respectfully disagrees with the reasoning set forth in Collier and Arrington because neither court addressed the fact that, under the DPPA, a plaintiff is precluded from obtaining relief from state officials acting in their official capacity (as opposed to the limited availability of such relief under § 1983).  Nor did either court address the difference between the statutes of limitations applicable to each cause of action.  As noted above, the Court finds that these considerations, along with the comprehensive nature of the DPPA's remedial scheme, demonstrate Congress' intent to

14

foreclose a remedy under § 1983.  Therefore, Plaintiff's § 1983 claims, as stated in Counts II, III, and IV of the Complaint, fail to the extent that they are based on underlying DPPA violations.

### b.    Federal constitutional bases

Plaintiff's § 1983 claims also fail to the extent that they are based on alleged violations of her constitutional rights.  The Court's reasoning that follows is also based upon its holding in Rasmussen.   See 991 F. Supp. 2d at 1074-77.

"The essential elements of a constitutional claim under § 1983 are (1) that the defendant acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, 673 F.3d 799, 805 (8th Cir. 2012) (citation omitted).  Here, Plaintiff alleges that each individual Defendant, acting under color of state law, violated her Fourteenth Amendment right to privacy, as well as her Fourth Amendment right to be free from an unconstitutional search, by obtaining her personal driver's license information without a legitimate purpose.  (See Compl. ¶¶ 341-44 [Doc. No. 1].)  However, the facts alleged by Rollins do not raise a right to relief under either basis.

The Eighth Circuit explained in Van Zee v. Hanson that "to violate the constitutional right of privacy," which is guaranteed by the Fourteenth Amendment,:

> "the information disclosed must be either a shocking degradation or an egregious humiliation . . . , or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." . . . . "To determine whether a particular disclosure satisfies this exacting standard, [the court] must examine the nature of the material . . . to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession."

630 F.3d 1126, 1128 (8th Cir. 2011) (internal citations omitted).  Thus, the "protection

against public dissemination of information is limited and extends only to highly personal

matters representing 'the most intimate aspects of human affairs.'"  Eagle v. Morgan, 88

F.3d 620, 625 (8th Cir. 1996) (citation omitted).  According to the Eighth Circuit, these

standards "set a high bar . . . and many disclosures, regardless of their nature, will not reach

the level of a constitutional violation."  Cooksey v. Boyer, 289 F.3d 513, 516 (8th Cir.

2002).  Similar to the Fourteenth Amendment standards, "[a] search occurs under the Fourth

Amendment when . . . 'the government violates a subjective expectation of privacy that

society recognizes as reasonable.'"  Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013)

(quoting Kyllo v. United States, 533 U.S. 27, 31-33 (2001)).

      The few courts that have analyzed these standards in the context of driver's license

information have found that an individual does not have a legitimate expectation of privacy

in such information.  For example, in Travis v. Reno, the court concluded that there is no

legitimate expectation of confidentiality – and, therefore, no constitutional right to privacy –

in an individual's name, address, telephone number, photograph, social security number,

driver identification number, and medical or disability information.  12 F. Supp. 2d 921, 925

(W.D. Wis. 1998), rev'd on other grounds, 163 F.3d 1000 (7th Cir. 1998); see also Pryor v.

Reno, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999) (stating that "there is no constitutional

right to privacy in motor vehicle record information"), rev'd on other grounds, 528 U.S.

1111 (2000); Condon v. Reno, 155 F.3d 453, 464 (4th Cir. 1998) (stating that motor vehicle

record information "is the very sort of information to which individuals do not have a reasonable expectation of privacy"), rev'd on other grounds, 528 U.S. 141 (2000).

Similarly, in Kiminski v. Hunt, a judge within this District determined that "[n]one of that data qualifies as so extremely personal as to trigger constitutional – as opposed to statutory – privacy protections." 2013 WL 6872425, at *15 (noting that "[n]ot even statutory protection existed for [driver's license record information] until 1994, when Congress passed the DPPA"); see also Nelson, 2013 WL 5888235, at *5 (finding no reasonable expectation of privacy in the information the plaintiff alleged was contained in his motor vehicle records, which included his name, date of birth, driver's license number and status, address, photograph, weight, height, and eye color).

Plaintiff argues that the Supreme Court's decision in Maracich v. Spears, 133 S. Ct. 2191 (2013), demonstrates "the importance of the privacy rights created by the DPPA." (See Pl.'s Resp. to Ramsey County at 19-21 [Doc. No. 1].)  In that case, the Court considered whether an attorney's solicitation of clients constituted a permissible purpose for disclosure under the DPPA.  See Maracich, 133 S. Ct. at 2195-96.  In doing so, it noted that:

> If (b)(4) were read to permit disclosure of personal information whenever any connection between the protected information and a potential legal dispute could be shown, it would undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records.
> . . . .
> An additional reason to hold that (b)(4) does not permit solicitation of clients is because the exception allows use of the most sensitive kind of information, including medical and disability history and Social Security numbers. To permit this highly personal information to be used in solicitation is so substantial an intrusion on privacy it must not be assumed, without language

more clear and explicit, that Congress intended to exempt attorneys from
DPPA liability in this regard.

Id. at 2200, 2202.  However, Maracich is not dispositive because the Court did not address

whether an individual has a *constitutional* right to privacy in driver's license record

information.  That issue was not before the Court, and the statements regarding privacy that

the Court did make cannot be understood to refer to a constitutional right rather than to a

statutory right.

      While the Eighth Circuit has not ruled on this exact issue, it has determined that the

disclosure of similar information is insufficient to state a claim for a violation of the

constitutional right to privacy.  In McCaslin v. Campbell, the court determined that the

plaintiff had not asserted a constitutional violation despite allegations that her driver's

license information, social security number, bank account numbers, criminal record,

previous landlords, previous names, and personal references were disclosed without her

consent.  No. 95-4041, 1997 WL 148824, at *1 (8th Cir. Apr. 2, 1997).  The court found

that much of the information was public record and that "the remaining information did not

involve the most intimate aspects of human affairs."  Id. at *2.  Therefore, the court

affirmed the district court's dismissal of the plaintiff's claim under Rule 12(b)(6).  Id. at *1;

see also Cooksey, 289 F.3d at 516 (finding that disclosure of the fact that an individual was

receiving psychological treatment for stress was "neither shockingly degrading [n]or

egregiously humiliating"); Eagle, 88 F.3d at 628 (explaining that "[b]ecause [the plaintiff]

has no legitimate expectation of privacy in the contents of his criminal history file, [the

court] cannot agree that the officers violated his constitutional right when they engaged in an unwarranted search of this material.").

In this case, Plaintiff alleges a privacy interest in her driver's license information. Plaintiff claims that her address, color photograph, date of birth, weight, height, eye color, driver identification number, and driving record were improperly accessed. (Compl. ¶ 164 [Doc. No. 1].)  With the exception of Plaintiff's driving record, all of this information is included on the face of a driver's license, and individuals show their driver's licenses to strangers on a daily basis.  Moreover, much of this information can be obtained by looking at an individual or by reviewing public records.  Thus, the disclosure of this information cannot be considered shockingly degrading or egregiously humiliating.  Nor could Plaintiff, based on the public nature of this information, legitimately expect that it would remain confidential.  Accordingly, as determined in <u>Travis</u>, <u>Kiminski</u>, and <u>McCaslin</u>, this information does not warrant constitutional protection because an individual does not have a legitimate expectation of privacy in it.

However, Plaintiff argues that, in addition to the information mentioned above, Minnesota driver's license records contain an individual's medical information and social security number.  (Compl. ¶ 164 [Doc. No. 1].)  Specifically, Plaintiff explains that the records include highly confidential medical information such as seizure, diabetes, and vision information, and that such information has long been recognized as protected.  (<u>See</u> Pl.'s Resp. to Ramsey County at 17 [Doc. No. 57].)

Although the Court doubts whether this information could even create a recognizable privacy interest, Plaintiff's claim still fails because she does not allege that such specific

medical information was obtained about *her*.  In fact, she states that Defendants accessed her social security number and medical information merely "upon information and belief." (Compl. ¶ 164 [Doc. No. 1].)  Rollins does not offer any allegations, facts, or affidavits to substantiate her "belief" that Defendants accessed her social security number and medical information.[4]  Therefore, Rollins' Complaint fails to "raise a reasonable expectation that discovery will reveal evidence of [the claim]."  See Twombly, 550 U.S. at 556.

As noted above, in Count III, Plaintiff also seeks to impose supervisory liability under § 1983 on the "entity" and "supervisor" Defendants for an alleged failure to monitor and enforce the rules or to train, supervise, and impose proper discipline.  (See Compl. ¶¶ 352-74 [Doc. No. 1].)  However, because Plaintiff has failed to state a claim for an underlying constitutional violation by any individual Defendant, Plaintiff has also failed to state a claim as to the entity and supervisor Defendants.  See Brockinton v. City of Sherwood, Arkansas, 503 F.3d 667, 673 (8th Cir. 2007) (noting that a county sheriff could not be held individually liable under § 1983 on a supervisory theory where the allegations did not establish an underlying constitutional violation by the county deputy); McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim.").  For the same reason, Plaintiff's claim in Count IV fails against the Commissioner Defendants and

---

[4]     In fact, according to a 2013 report published by the Officer of the Legislative Auditor of the State of Minnesota, an individual's social security number and sensitive medical information are not visible via the DVS or BCA systems.  (See Kaczor Aff., Ex. 1 "Law Enforcement's Use of State Databases" at 20-22 [Doc. No. 23-1].)

the DPS Does.  (See Compl. ¶¶ 375-92 [Doc. No. 1].)  Because Plaintiff has failed to state a

claim for an underlying constitutional violation by any individual Defendant, Plaintiff failed

to state a claim as to the Commissioner Defendants and the DPS Does.  Therefore, to the

extent that Plaintiff's § 1983 claims, as stated in Counts II, III, and IV of the Complaint, are

based on an underlying constitutional violation, those claims are dismissed.

### c.      Minnesota state law bases

Finally, Plaintiff's § 1983 claims in Counts II, III, and IV, which are grounded on

violations of Minnesota state law, also fail.  Again, the Court's reasoning that follows

mirrors its Rasmussen holding.  See Rasmussen, 991 F. Supp. at 1077.  Plaintiff does not

identify in her Complaint which of "the laws of the State of Minnesota" she seeks to enforce

through § 1983.  (Compl. ¶ 344 [Doc. No. 1].)  However, as noted by the Eighth Circuit, "a

violation of state law, without more, does not state a claim under the federal Constitution or

42 U.S.C. § 1983."  Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993) (citation omitted).

For the foregoing reasons, Counts II, III, and IV of Plaintiff's Complaint, fail to state a

claim for relief and must be dismissed.

### 2.  Count V: Intrusion Upon Seclusion

Plaintiff also alleges a claim for common law invasion of privacy – namely, that

Defendants intruded upon her seclusion.  (See Compl. ¶¶ 393-98 [Doc. No. 1].)  In

Minnesota, intrusion upon seclusion occurs when one "intentionally intrudes, physically

or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . .

. if the intrusion would be highly offensive to a reasonable person."  Lake v. Wal-Mart

Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998).  "The tort has three elements: (a) an

intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." Swarthout v. Mutual Service Life Insurance Co., 632 N.W.2d 741, 744 (Minn. Ct. App. 2001) (citation omitted).

Generally, what is "highly offensive" is a question of fact for the jury, and becomes a question of law only "if reasonable persons can draw only one conclusion from the evidence." Id. at 745.  In determining whether an intrusion is offensive, courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded," and "the number and frequency of the intrusive contacts." Bauer v. Ford Motor Credit Co., 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001).  The interference must be a "substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object." Swarthout, 632 N.W.2d at 745 (emphasis added).  Therefore, while an individual may have a reasonable expectation of privacy in nude photographs of herself or in her private medical information, she does not have a reasonable expectation of privacy in discussing termination of her employment. See Lake, 582 N.W.2d at 235 (stating that "[o]ne's naked body is . . . generally known to others only by choice" and "is a type of privacy interest worthy of protection"); Swarthout, 632 N.W.2d at 745 (reversing summary judgment on an intrusion upon seclusion claim involving private medical information); Groeneweg v. Interstate Enters., Inc., No. A04-1290, 2005 WL 894768, at *6 (Minn. Ct. App. Apr. 19, 2005) (holding

that an individual had no legitimate expectation of privacy at a meeting with co-workers in which her termination was discussed).

In Nelson, Rasmussen, and Kampschroer v. Anoka County, this Court analyzed the viability of a claim for intrusion upon seclusion under Minnesota law in the context of an alleged DPPA violation.  In Nelson and Rasmussen, the plaintiffs alleged that the defendants intruded upon their seclusion by accessing, or allowing access to, their motor vehicle records.  Nelson, 2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1078-79.  In both cases the Court found that the expectation of privacy in, and the sensitive nature of, driver's license information is low because individuals frequently show their driver's license to strangers and because most of the information contained in driver's license records is public.  For instance, the Nelson Court explained that "a person can ascertain another's likeness, height, weight, and eye color upon viewing him or her and may be able to ascertain another's driver's license status or address through public records."  2013 WL 5888235, at *8.  Since the plaintiffs in either case did not allege that the records at issue contained a social security number or financial or medical information, the Court held that "no reasonable person could consider the intrusion . . . highly offensive."  Id.; Rasmussen, 991 F. Supp. 2d at 1078-79.

In Kampschroer, the plaintiffs claimed that in addition to their "home address, color photographs, dates of birth, eye color, heights, weights, driver identification numbers," the defendants accessed their "medical and social security information."  No. 13-cv-2512 (SRN/TNL), 2014 WL 4988405, at *15 (D. Minn. Oct. 7, 2014).  Similar to this Court's holding in Nelson and Rasmussen, in Kampschroer it held that "[n]o

reasonable person could find that the alleged access of a home address, photographs, dates of birth, eye color, heights, weights, and driver identification numbers meets the 'highly offensive' threshold." Id.  As for the medical information and social security number, the Court explained that the plaintiffs' complaint failed to adequately allege access of this data. Id.  The Court emphasized that "[m]erely alleging [that such information was accessed] 'on information and belief' [was] insufficient." Id.

Analogous to the plaintiffs' allegations in Kampschroer, here, Rollins alleges that Defendants accessed her home address, color photograph, date of birth, eye color, height, weight, driver identification number, and medical and social security information. (Compl. ¶ 164 [Doc. No. 1].)  As noted above, the tort for intrusion of privacy has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy.  Swarthout, 632 N.W.2d at 744.  Plaintiff contends that Defendants intruded on her privacy by impermissibly accessing her private data.  (See generally Compl. [Doc. No. 1].)  She claims that she submitted her private data "because of the promise of confidentiality made by DPS."  (Compl. ¶ 273 [Doc. No. 1].)

The Court begins by addressing Plaintiff's claim based on her home address, color photograph, date of birth, eye color, height, weight, driver identification number.  The Court finds that no reasonable person could have a legitimate expectation of privacy in this data.  Nelson, 2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1078-79.  Nor does the alleged access of this data meet the "highly offensive" standard.  See id.  This information is not particularly sensitive in nature, and individuals routinely turn over

such information when they show their driver's license.  And, much of this information is

apparent from looking at an individual or through public documents.  See, e.g., Nelson,

2013 WL 5888235, at *8; Rasmussen, 991 F. Supp. 2d at 1077-78; Kampschroer, 2014

WL 4988405, at *14-15, Bass, 2014 WL 683969, at *7; Mallak v. Aitkin County, No. 13-

cv-2119 (DWF/LIB), 2014 WL 1285807, at *14 (D. Minn. Mar. 31, 2014).

        As for Rollins' medical information and social security number, while Plaintiff

may have a legitimate expectation of privacy in it, the Complaint does not adequately

allege such accesses.  Plaintiff alleges that Defendants accessed her social security

number and medical information "upon information and belief."  (Compl. ¶ 164 [Doc.

No. 1].)  It is insufficient to merely allege that this information was accessed "on

information and belief."  Kampschroer, 2014 WL 4988405, at *15.  Moreover, although

Plaintiff alleges that the DPS databases include a driver's social security number and

health information (Compl. ¶¶ 234-35 [Doc. No. 1]), the Office of the Legislative Auditor

report, which Plaintiff submitted, demonstrates that the DVS or BCA systems do not

display an individual's  social security number or sensitive medical information.  (See

Kaczor Aff., Ex. 1 "Law Enforcement's Use of State Databases" at 21, 22 [Doc. No. 23-

1] (showing through illustrations that the only "medical" information that is visible

through the DVS system is an individual's commercial driver's license medical

certification information, and the "medical" information that is visible through the BCA

system is whether an individual wears glasses and is an organ donor.)

        Although Plaintiff's Complaint need not contain "detailed factual allegations," it

must contain facts with enough specificity "to raise a right to relief above the speculative

level." <u>Twombly</u>, 550 U.S. at 555.  Plaintiff's Complaint fails to meet this threshold with respect to her allegations about Defendants viewing her social security number and medical information.  Therefore, the Court concludes that Plaintiff fails to state a claim for common law invasion of privacy, and dismisses this claim against all Defendants.

### 3.  Count I: DPPA Claim

Since the Court has dismissed Plaintiff's Counts II, III, IV, and V, the only remaining claim to address is Plaintiff's Count I.  Below, the Court addresses each Defendant's motion and arguments individually.

### a.  Defendant Hennepin County

Plaintiff alleges that Hennepin County officers accessed her private data seven times.  (Compl. ¶ 109 [Doc. No. 1].)  To support her allegations, Plaintiff attached to her Complaint an excerpt from the DVS audit.  (<u>Id.</u> ¶¶ 3, 62; Compl., Ex. A [Doc. No. 1-1].)  The excerpt lists only a single obtainment by Hennepin County.  (<u>Id.</u>)  However, this excerpt is just that – an excerpt.  (Compl. ¶ 62 [Doc. No. 1].)  Therefore, Hennepin County may have accessed Rollins' information via the DVS system more times, but Plaintiff chose not to include those obtainments in the excerpt she presented to the Court.  Plaintiff also attached to her Complaint a copy of the BCA audit.  (Compl., Ex. B [Doc. No. 1-1].)  Several Defendants note, and the Court agrees, that the BCA search results are exceedingly difficult to comprehend.  Nonetheless, Plaintiff is not required to support her allegations in her Complaint with a readable exhibit detailing each Defendant's accesses.  Therefore, the Court assumes that the complete DVS and BCA search results indicate that Hennepin County accessed Plaintiff's data a total of seven times.

Defendant Hennepin County argues that Rollins' DPPA claim must be dismissed because: (1) Plaintiff's claim is barred by the statute of limitations;[5] (2) her Complaint fails to plead a plausible claim against Hennepin County; and (3) the unnamed individual and supervisor Defendants from Hennepin County are entitled to qualified immunity. (See Def. Hennepin County's Mem. at 6 [Doc. No. 22].)  The Court addresses each of these arguments below.

### (1) Statute of Limitations

"[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss."  Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted).  The DPPA does not contain its own statute of limitations provision, and the parties agree that 28 U.S.C. § 1658(a)'s general four-year limitations period for civil actions arising under federal law applies.  See 28 U.S.C. § 1658(a); (Def. Hennepin County's Mem. at 6 [Doc. No. 22]; Pl.'s Resp. to Def. Hennepin County at 3 [Doc. No. 56].)

However, the parties dispute when a DPPA cause of action accrues for purposes of determining when the four-year limitations period begins to run.  Defendant asserts that the standard, or injury-occurrence, rule should apply, while Plaintiff argues that the discovery rule should apply.  Under the standard rule, "a claim accrues 'when the

---

[5]     Defendants also argue that Plaintiff's § 1983 and common law invasion of privacy claims are barred by the relevant statutes of limitations. Because those claims fail for the reasons discussed above, the Court will only address Defendants' statute of limitations argument in regard to Plaintiff's DPPA claims.

plaintiff has a complete and present cause of action.'" Gabelli v. S.E.C., 133 S. Ct. 1216,

1220 (2013) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  The discovery rule,

on the other hand, "delays accrual of a cause of action until the plaintiff has 'discovered'

it." Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010).  According to the Supreme

Court's holding in Gabelli, the discovery rule is an exception to the standard rule, applied

only when a defendant's deceptive conduct prevents a plaintiff from even knowing that

she or he has been defrauded.  Gabelli, 133 S. Ct. at 1221.

Although the Supreme Court and Eighth Circuit have not ruled on which accrual

rule to apply in a DPPA case, lower courts have addressed this issue.  Courts in this

District have resoundingly held that the standard rule for accrual applies, such that a

DPPA cause of action accrues at the time the improper access of information occurs.[6]

See, e.g., Mallak v. Aitkin County, No. 13-cv-2119 (DWF/LIB), 2014 WL 1285807, at

*4-6 (D. Minn. Mar. 31, 2014); Sheila Potocnik v. Carlson, No. 13-cv-2093 (PJS/JJG),

2014 WL 1206403, at *9 (D. Minn. Mar. 24, 2014); Bass v. Anoka County, 998 F. Supp.

---

[6]     Plaintiff asserts that the court in English v. Parker, No. 6:09-cv-1914-Orl-31GJK,
2011 WL 1842890 (M.D. Fla. May 16, 2011), used the discovery rule to determine the
time of accrual under § 1658(a) in the context of a DPPA claim.  (See Pl.'s Resp. to Def.
Hennepin County at 25 [Doc. No. 56].)  In that case, the court stated that there was not
enough information upon which to grant summary judgment on statute of limitations
grounds.  Plaintiff contends that the English Court's comment that it could not tell "when
Mark English was or should have become aware that his records were being accessed"
would be superfluous if the court was applying the injury-occurrence rule.  (Pl.'s Resp. at
Hennepin County at 26 [Doc. No. 56].)  The Court disagrees with Rollins'
characterization of the English Court's holding.  In English, the court did not select which
statute of limitations rule to apply.  Rather, the phrase that Plaintiff takes issue with was
simply part of a list of information that the court determined would have been relevant to
the application of the standard rule *and/or* the discovery rule.  English, 2011 WL
1842890, at *5.  Therefore, the court did not reach the question as to whether the standard
rule or discovery rule would apply to the plaintiff's DPPA claim.

2d 813 (D. Minn. 2014); Brian Potocnik v. Anoka County, No. 13-cv-1103 (DSD/TNL),

2014 WL 683980, at *2 (D. Minn. Feb. 21, 2014); McDonough v. Al's Auto Sales, Inc.,

No. 13-cv-1889 (DSD/FLN), 2014 WL 683998, at *2 (D. Minn. Feb. 21, 2014);

Rasmussen, 919 F. Supp. 2d at 1079; Kampschroer, 2014 WL 4988405, at *5-6; Kost v.

Hunt, Civ. No. 13-583 (JNE/TNL), 2013 WL 6048921, at *5–8  (D. Minn. Nov. 15,

2013) (finding that the exceptional nature of the discovery rule, the text and structure of

§ 1658, and the substantive area covered by the DPPA, all support application of the

standard rule).

    Those courts' holdings are consistent with the Supreme Court's description of

when the discovery rule should be applied.  In TRW Inc. v. Andrews, the Supreme Court

limited application of the discovery rule to a few contexts: fraud or concealment, latent

disease, and medical malpractice.  See 534 U.S. 19, 27 (2001).  Accordingly, here, the

Court applies the standard rule for accrual to Plaintiff's DPPA claims.

    Despite this precedent, Plaintiff argues that the Court should apply the discovery

rule because "Congress provided no directive on the applicability of the discovery or

injury-occurrence rules when referring to § 1658(a)."  (See Pl.'s Resp. to Def. Hennepin

County at 5 [Doc. No. 56].)  She argues that because § 1658 applies the discovery rule in

subsection (b)(1), and the injury-occurrence rule in subsection (b)(2), then Congress must

not have intended the injury-occurrence rule to be the default rule for § 1658(a).  (Id. at

6.)  Rollins misreads § 1658.  As this Court explained in Rasmussen, Congress amended

§ 1658 by adding only subsection (b), which incorporates the discovery rule.  991 F.

Supp. 2d at 1082.  However, when subsection (b) was added, Congress did not

additionally amend subsection (a).  Id.  Since subsection (b) expressly incorporates the

discovery rule and subsection (a) does not, through amending § 1658, Congress

demonstrated that subsection (a) does *not* incorporate the discovery rule.  Id. (citing

Gross v. Max, 906 F. Supp. 2d 802, 812-13 (N.D. Ind. 2012)). [7]

Plaintiff raises numerous arguments in an attempt to distinguish her case and argue

that the discovery rule applies to DPPA claims.  First, Plaintiff argues that the

applicability of TRW Inc. is highly limited since the precise language of the statute at

issue in that case, the Fair Credit Reporting Act ("FCRA"), differs from § 1658.  (See

Pl.'s Resp. to Def. Hennepin County at 12 [Doc. No. 56].)  Rollins contends that TRW

Inc. is irrelevant to this Court's interpretation of § 1658, because the FCRA's statute of

limitations uses the term "arises," as opposed to § 1658, which uses the term "accrues."

(Id.)  The Court finds Plaintiff's distinction inapposite because the Court relies on TRW

Inc. insofar as it stands for the principle that the discovery rule is only applicable in a

limited number of contexts involving fraud.

Additionally, Rollins contends that courts construing general statutes of limitation

apply the discovery rule unless Congress manifests a different intent.  (See id. at 4-5.)

Plaintiff relies in part on this Court's decision in In re Weldeabzghi, 2013 WL 717755

---

[7]     Plaintiff attempts to distinguish her case from Gross.  (See Pl.'s Resp. to Def.
Hennepin County at 20 [Doc. No. 56].)  She argues that the plaintiffs in Gross were
unaware of the law that required defendants to disclose that their house had lead paint.
(Id.)  In contrast, Rollins contends that unlike the plaintiffs in Gross, she was not ignorant
of the law.  (Id.)  Rather, Plaintiff claims that Defendants concealed the fact that they
violated the law by accessing her information.  (Id.)  As the Court discusses later,
Defendants did not affirmatively conceal their accesses.  Therefore, Plaintiff's attempt to
distinguish her case from Gross is unavailing.

(D. Minn. Feb. 27, 2013).  (See id. at 18.)  Plaintiff's reliance on this case is misplaced.

In In re Weldeabzghi, this Court cited to Eighth Circuit precedent establishing that claims

accrue for purposes of the statute of limitations in 28 U.S.C. § 2401(a) "when the plaintiff

'either knew, or in the exercise of reasonable diligence should have known, that [he or

she] had a claim.'"  2013 WL 717755, at *6 (quoting Izaak Walton League of Am., Inc.

v. Kimbell, 558 F.3d 751, 759 (8th Cir. 2009)).  However, as discussed herein, Congress

manifested a different intent in the statute of limitations in 28 U.S.C. §1658(a).  The

Court disagrees with Plaintiff that by amending subsection (b), and not subsection (a),

"Congress was silent on the discovery or injury-occurrence rule."  (Pl.'s Resp. to Def.

Hennepin County at 19, n.5 [Doc. No. 56].)  In fact, in TRW Inc., the Supreme Court

stated that a directive from Congress need not be explicit – it may also be implied from

the text or structure of a particular statute.  TRW Inc., 534 U.S. at 27-28 (holding that the

text and structure of the Fair Credit Report Act demonstrates that "Congress implicitly

excluded a general discovery rule by explicitly including a more limited one").

Plaintiff also claims that Maverick Transp., LLC v. U.S. Dep't of Labor,

Administrative Review Bd. supports her position that § 1658(a) incorporates the

discovery rule.  739 F. 3d 1149 (8th Cir. 2014).  In Maverick Transp., the Eighth Circuit

found "no indication Congress intended to exclude a version of the general discovery

accrual rule from the [Surface Transportation Assistance Act]."  Id. at 1154.  Here,

however, the Court has already demonstrated how Congress' amendment of § 1658

demonstrated that it indeed intended to exclude the discovery accrual rule from

subsection (a).  Thus, <u>Maverick Transp.</u> does not support Rollins' position and is distinguishable.

Finally, Plaintiff mischaracterizes the Supreme Court's holding in <u>Gabelli</u> and her own experience of allegedly being "defrauded" by Defendants.  In <u>Gabelli</u>, the Supreme Court applied the standard rule because there was a "lack of textual, historical, or equitable reasons to graft a discovery rule onto the statute of limitations [in 28 U.S.C. § 2462]," which governs many penalty provisions.  <u>See Gabelli</u>, 133 S. Ct. at 1224.  Rollins correctly states that the <u>Gabelli</u> Court refused to apply the discovery rule in the context of an SEC enforcement action because: (1) the SEC was dissimilar from a typical defrauded plaintiff, since it had powerful tools at its disposal to combat fraud; and (2) the SEC was not seeking typical relief, since it was seeking penalties as opposed to damages. (<u>See</u> Pl.'s Resp. to Def. Hennepin County at 7 (citing <u>Gabelli</u>, 133 S. Ct. at 1222-23) [Doc. No. 56].)  However, Rollins incorrectly characterizes herself as a typical defrauded Plaintiff. (<u>See id.</u> at 7-8, 11.)

The nature of the injury addressed by the DPPA – the obtaining of motor vehicle record information for an impermissible purpose – is not in the same category as fraud, concealment, latent disease, or medical malpractice because there is no similarly deceptive conduct or concealment.  Rather, the violation occurs from accessing the information without a permissible purpose, which is more akin to the type of injury the FCRA is meant to address.[8]  Moreover, although Plaintiff describes the accesses as

---

[8]      Moreover, as noted by at least one defendant, an individual's ability to obtain a copy of her credit report at any time is analogous to an individual's ability to request

CASE 0:14-cv-00299-SRN-HB   Document 99   Filed 12/08/14   Page 33 of 73

"surreptitious, concealed, and hidden," these characterizations misstate the relevant facts.

(Compl. ¶ 239 [Doc. No. 1].)  Plaintiff received her DPS audit in a timely fashion after

she requested it in 2013. [9]  (Id. ¶¶ 249, 251.)  Thus, neither Hennepin County, nor any of

the other Defendants, concealed their accesses.  While it is true that a plaintiff may not be

aware of accesses of her personal data unless she requests an audit, not knowing about

the lookups does not equate to fraud or purposeful concealment.  Hennepin County

correctly notes, "[t]he fraudulent concealment doctrine does not apply simply because a

plaintiff was not affirmatively informed of an alleged wrong."  (Def. Hennepin County's

Reply at 6 [Doc. No. 67].)  As a judge in this District noted in Mallak, "[m]erely being

unknown is insufficient, the information must also be unknowable."  91 F. Supp. 3d at

---

information pertaining to her DVS records.  (See Def. Hennepin County's Mem. at 8-9
[Doc. No. 27].)

[9]    Plaintiff cites to a non-existent paragraph of her Complaint and claims that "DPS
affirmatively misrepresented to Plaintiff the scope of the violations, refused her specific
request for information on the subject."  (See Pl.'s Resp. to Hennepin County at 17 [Doc.
No. 56].)  Defendant Hennepin County responds by stating that "[t]hese arguments were
likely included in error in Plaintiff's responsive memorandum, as they appear to relate to
another DPPA plaintiff who is represented by the same counsel."  (See Def. Hennepin
County's Reply at 5, n.2 [Doc. No. 67].)  The Court agrees.  Plaintiff did not allege any
facts in her Complaint to support the allegation that the DPS affirmatively misrepresented
anything to Plaintiff, or to support the allegation that the DPS refused her request for an
audit.  Accordingly, the Court agrees with Hennepin County that Plaintiff was not the
victim of "inequitable circumstances" and thus, no basis for applying the doctrine of
equitable tolling exists.  (See Def. Hennepin County's Mem. at 8 [Doc. No. 22]);
Firstcom, Inc. v. Qwest Corp., 555 F.3d 669, 675 (8th Cir. 2009) (explaining that
equitable tolling "permits a plaintiff to sue after the statutory time period has expired if
he has been prevented from doing so due to inequitable circumstances") (internal
quotation omitted).
      Plaintiff also argues that had she requested an audit from the DPS in 2011, the
DPS would have denied her request because that was the agency's prior practice.  (See
Compl. ¶ 246 [Doc. No. 1].)  This argument fails because Plaintiff, in fact, did not seek
an audit until two years after the DPS's allegedly restrictive policy was modified.

33

1054-55 (internal citations omitted).  Accordingly, Plaintiff incorrectly analogizes her case to a series of cases that involve defendants who "wrongfully conceal[ed] material facts." (See Pl.'s Resp. to Def. Hennepin County at 15-16 [Doc. No. 56].)  Simply because the purpose of the DPPA is to protect basic privacy rights does not mean that the discovery rule applies, or that the accesses of Plaintiff's information were concealed from her.  (Cf. id. at 14.)  Therefore, the substantive area governed by the DPPA does not require application of the discovery rule.

Based on the foregoing, the standard rule for accrual applies to Plaintiff's DPPA claims.  The Complaint in this case was filed on January 31, 2014, so Plaintiff's DPPA claims that are based on allegations of improper conduct occurring more than four years prior to that date – *i.e.*, prior to January 31, 2010 – are barred.  Accordingly, the Court finds that at least one of Hennepin County's accesses falls outside the statute of limitations.  The DVS audit excerpt shows that a Hennepin County officer accessed Rollins' information on May 8, 2007.  (See Compl., Ex. A at 2 [Doc. No. 1-1].)  This access occurred before January 31, 2010, and thus, is not actionable.  However, because Plaintiff did not specify when the other six accesses by Hennepin County occurred, the Court is unaware of how many more of Plaintiff's DPPA claims are barred by the statute of limitations.  Insofar as any additional accesses by Hennepin County occurred prior to January 31, 2010, claims based on those accesses are also time-barred.

### (2) Plausibility

Assuming Hennepin County officers accessed Plaintiff's private data after January 31, 2010, the Court continues by addressing Defendant Hennepin County's second basis

for dismissing Plaintiff's DPPA claims.  To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed, or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted.  18 U.S.C. § 2724(a).  Here, Plaintiff and Hennepin County dispute whether the third element of the claim is pled sufficiently: whether a Hennepin County official obtained Plaintiff's private data "for a purpose not permitted."

Hennepin County contends that "Plaintiff has not alleged any facts that would plausibly suggest Hennepin County's alleged access[es] [were] conducted for an improper purpose."  (Def. Hennepin County's Mem. at 12 [Doc. No. 22].)  Hennepin County argues that Rollins' Complaint "must include factual allegations of an impermissible purpose."  (Id. at 14-15.)  In her response, Plaintiff contends that she need not prove an impermissible purpose for each obtainment.  (See Pl.'s Resp. to Def. Ramsey County at 9-11 [Doc. No. 57].)[10]  Rather, Plaintiff claims that she only needs to plausibly allege that "for whatever purpose Defendant obtained or used her information, it was not a permitted purpose under the statute."  (Id. at 12.)  The Court agrees.

Here, Plaintiff alleges that Defendant Hennepin County, and the other individual and entity Defendants, did not access her information for any purposes permitted by the DPPA. (See Compl. ¶¶ 109-112 [Doc. No. 1].)  Furthermore, sufficient facts exist for the Court to

---

[10]   In Plaintiff's response memorandum to Defendant Hennepin County's Motion to Dismiss, Rollins incorporates arguments from her response brief to Defendant Ramsey County's Motion to Dismiss.  (See Pl.'s Resp. to Def. Hennepin County at 27 [Doc. No. 56].)

infer that Plaintiff's personal information was obtained for a purpose not permitted under

the DPPA.  The Complaint alleges that:

- Plaintiff has a tenuous relationship with her mother and uncle, both of whom are involved in state and local government entities.  (Compl. ¶¶ 47-50 [Doc. No. 1.])

- Rollins has additional family members who are also employed by law enforcement within  Minnesota.  (See id. ¶ 48, 55.)

- Plaintiff fears that her mother, her uncle, or other family members employed by state and local agencies, and those associated with those family members, have been obtaining her information for purposes not permitted by the DPPA. (Id. ¶ 55.)

- Plaintiff's personal information was searched not by license plate number, but rather, by her name.  (Id. ¶ 3.)

- Officers and personnel from dozens of different departments and agencies accessed Rollins' private information approximately 574 times from 2003 to 2013.  (Id. ¶ 2.)

- Rollins has never been advised that she was a suspect or even an interested party in any civil, criminal, administrative, or arbitral proceeding.  (Id. ¶¶ 69-160, 255.)

- Rollins has not been stopped for a traffic violation since approximately 2011; and has only been stopped one time since her early twenties.  (Id. ¶ 256.) Taking into account these traffic stops, the audit Rollins requested did not include any license plate or driver's license number look ups.  (Id. ¶ 252.)

Under Iqbal and Twombly, a complaint must contain facts with enough specificity "to raise

a right of right to relief above the speculative level," Twombly, 550 U.S. at 555, and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are insufficient.  Iqbal, 556 U.S. at 678.  Here, Plaintiff's cause of action is not

supported by "mere conclusory statements."  Cf. id.  Rather, the facts listed above,

altogether, suggest that Defendant Hennepin County's lookups of Plaintiff's private

information did not occur in the course of typical law enforcement functions.

These facts, therefore, distinguish this case from others in this District in which the

courts found that the plaintiffs failed to state a DPPA claim.  In some of these cases, the

plaintiff unsuccessfully argued that a sheer number of accesses created a reasonable

inference of a violation.  E.g., Bass, 2014 WL 683969, at *3; McDonough v. Al's Auto

Sales, Inc., Civ. No. 13-1889 (DSD/FLN), 2014 WL 683998, at *3 (D. Minn. Feb. 21,

2014).  And, in Traub v. City of Saint Paul, the plaintiff relied on the lookups, her

contemporaneous involvement in some publicized activity, and the absence of direct

interaction with any defendant, to infer that the lookups were for an improper purpose.

Traub v. City of Saint Paul, Civ. No. 13-3017 (MJD/JJK), 2014 WL 2881484, at *4 (D.

Minn. June 25, 2014).  The Court, however, rejected such an inference, noting that:

> A total of twelve lookups have been alleged against eight Defendants; one
> look-up is alleged with respect to five Defendants; no more than three
> accesses are alleged by any one Defendant; and none of the motor vehicle
> record searches was conducted at a "questionable" time of day or night.
> There is no allegation that Plaintiff's records were accessed by name rather
> than license plate number, and there is no significant cluster of locations or
> law enforcement agencies making the record requests.

Id.  Unlike these cases, the Plaintiff in this case alleges that her information was accessed by

name and she also identified two government employees, her family members, who may

have a potential motive to improperly access her private data.  These tenuous family

relationships, in combination with Plaintiff's claim that she has never been an interested

party in any law enforcement matter, support the inference that a permissible purpose for the

lookups did not exist.  See Twombly, 550 U.S. at 555.  At this early stage of litigation,

37

Plaintiff need not plead – and indeed, does not know without discovery – the precise impermissible purpose for which her information was accessed.  See Smythe v. City of Onamia, No. 12-cv-3149 (ADM/LIB), 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) (noting that "a person may still violate the DPPA if he retrieves motor vehicle records and does not misuse the information; simply retrieving records without a permitted purpose is a violation").

Defendant Hennepin County argues that Plaintiff's allegations about her family members' motives are "wholly unconnected to Hennepin County" because "Plaintiff does not allege any concert of action among Defendants."  (See Def. Hennepin County's Mem. at 16 [Doc. No. 22].)  The Court disagrees.  Reading Plaintiff's Complaint as a whole, Rollins pleads sufficient facts to allege that Defendants acted jointly in their allegedly impermissible lookups.  Although Plaintiff does not directly allege in her Complaint that Defendants acted in concert with one another, she states that she "fears that her mother or uncle, and those associated with her mother or other family, have been obtaining, using, or disclosing her information for purposes not permitted by the DPPA."  (Compl. ¶ 55 [Doc. No. 1].)  Construing all reasonable inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's Complaint as alleging that Rollins' family members "associate" with individuals employed by Hennepin County.  Morton, 793 F.2d at 187.  Therefore, because Plaintiff sufficiently pled that her personal information was knowingly obtained for a purpose not permitted under the DPPA, dismissal of the DPPA claims against Hennepin County is inappropriate.

38

### (3) Qualified Immunity

Finally, the Court considers whether Hennepin County and its officers and supervisors are entitled to qualified immunity for Plaintiff's DPPA claims that are not barred by the statute of limitations. "Qualified immunity shields government officials from [personal] liability and the burdens of litigation . . . unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013). Thus, determining whether qualified immunity applies involves consideration of two questions: (1) whether the facts alleged constitute a violation of a constitutional or statutory right, and (2) whether that right was "clearly established" at the time of the alleged violation. LaCross v. City of Duluth, 713 F.3d 1155, 1157–58 (8th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

As for the second question, "'[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Williams v. Herron, 687 F.3d 971, 977 (8th Cir. 2012) (quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2083 (2011)). The court must look to the state of the law at the time the alleged misconduct occurred. Id. (citation omitted). Although there need not have been a case directly on point in order for the law to have been clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014) (quoting al-Kidd, 131 S. Ct. at 2083).

39

As discussed above, Plaintiff sufficiently alleged that Defendant Hennepin County violated her statutory rights under the DPPA.  However, Hennepin County argues that, even assuming the access of a motor vehicle record constitutes a violation of the DPPA, it was not "clearly established" that such conduct violated the DPPA at the time the alleged lookups occurred.  (E.g., Def. Hennepin County's Mem. at 24 [Doc. No. 22].)  Plaintiff, on the other hand, argues that the statutory language itself provided sufficient notice to Hennepin County officials that obtaining private driver's license information without a permissible purpose was prohibited.  (E.g., Pl.'s Resp. to Def. Hennepin County at 31 [Doc. No. 56].)

This Court agrees with Rollins.  The DPPA, enacted in 1994, clearly prohibits "knowingly obtain[ing] . . . personal information, from a motor vehicle record, for a purpose not permitted."  By the time the alleged lookups began in 2003 – nine years after the DPPA took effect – Hennepin County and its officers and supervisors would have been on notice of the statute and its prohibitions.  See Mallak, 2014 WL 1285807, at *13.

Hennepin County's reliance on Roth v. Guzman is misplaced.  (See Def. Hennepin County's Mem. at 23-24 [Doc. No. 22].)  In Roth, the pleadings demonstrated that the defendant government officials disclosed personal information from the plaintiffs' motor vehicle records to a company based on that company's representation that the information would be used for a permissible purpose under the DPPA.  650 F.3d 603, 607–08 (6th Cir. 2011).  The company then transferred the information to another entity, which made the information available on its website.  Id. at 608.  The Sixth Circuit found that the defendants' alleged disclosure was for "an explicitly permissible purpose" under the

DPPA, regardless of the recipient's undisclosed intention to use the information for an impermissible purpose.  Id. at 611 (emphasis omitted).  However, the court held, even if the DPPA could be read to impose liability where "personal information disclosed for a purportedly permissible purpose was actually obtained for an impermissible purpose," that right was not clearly established at the time of the alleged disclosure because the unlawfulness was not apparent.  Id. at 612.

Here, as was the case in Kampschroer, the unlawfulness of Defendant's alleged conduct would have been readily apparent to Defendant at the time it occurred because that conduct contravenes the plain language of the statute.  See Collier v. Dickinson, 477 F.3d 1306, 1311 (11th Cir. 2007) (denying qualified immunity because the DPPA's plain language prohibiting the release of personal information without the express consent of the person to whom the information relates "gave clear notice" to the defendant government officials that the release of such information without consent violated federal law).  Accordingly, at this stage of the proceedings – where Plaintiff has adequately alleged the violation of a clearly established statutory right – Defendant is not entitled to qualified immunity on Plaintiff's DPPA claims that are not barred by the statute of limitations.

### b.  Defendants City of Albert Lea, et al.

Defendants City of Albert Lea, City of Anoka, City of Blaine, City of Breezy Point, City of Brooklyn Part, City of Champlin, City of Coon Rapids, City of Elk River, City of Howard Lake, City of Maplewood, City of Minnetonka, City of Mora, City of North St. Paul, City of Ramsey, City of Rogers, and City of Roseville [hereinafter

"Defendants City of Albert Lea, et al."] also filed a Motion to Dismiss and in the Alternative to Sever Plaintiff's Complaint [Doc. No. 25]. Although their supporting memorandum was brief, they joined in Hennepin County's legal arguments pertaining to "the statute of limitations on DPPA . . . [and] Plaintiff's failure to state a DPPA [claim]." (Defs. City of Albert Lea, et al.'s Mem. at 4 [Doc. No. 28].) Therefore, the Court proceeds by addressing both arguments in turn.

### (1) Statute of Limitations

Consistent with the Court's discussion in Section III(B)(3)(a)(1), the Court applies the standard rule for accrual to Plaintiff's DPPA claims against Defendants City of Albert Lea et al. Therefore, Plaintiff's DPPA claims that are based on allegations of improper conduct occurring prior to January 31, 2010 are barred. Although Rollins did not specify the precise dates and times for each allegedly improper access by each Defendant, the Court proceeds by identifying which known accesses occurred prior to the cut-off date.

Rollins alleges that the City of Albert Lea impermissibly accessed her data only one time. (Compl. ¶ 69 [Doc. No. 1].) In the excerpt from the DVS audit that Plaintiff attached to her Complaint, she notes that an unnamed officer from the Albert Lea Police Department obtained her private data on July 3, 2007. (Compl., Ex. A at 1 [Doc. No. 1-1].) This single access precedes the January 31, 2010 cut-off date for actionable claims. Therefore, Plaintiff's DPPA claim against Defendant City of Albert Lea is dismissed.

Plaintiff alleges City of Anoka officials violated the DPPA by accessing her data three times. (Compl. ¶ 77 [Doc. No. 1]). The DVS audit excerpt demonstrates that officers from the City of Anoka Police Department accessed Rollins' data once on May 27,

2003, and twice on September 13, 2010.  (Compl., Ex. A at 1 [Doc. No. 1-1].)[11]  Plaintiff's

DPPA claim based on the May 27, 2003 access is dismissed as it is barred by the statute

of limitations.  Accordingly, Plaintiff's DPPA claims against the City of Anoka are

limited to two accesses.

Plaintiff alleges that officials from the City of Blaine improperly accessed her

private data once.  (Compl. ¶ 81 [Doc. No. 1].)  According to the DVS audit excerpt, an

officer from the Blaine Police Department accessed Rollins' data on October 17, 2003.

(Compl., Ex. A at 1 [Doc. No. 1-1].)  This access precedes the cut-off date for the statute

of limitations.  Therefore, Plaintiff's DPPA claim against the City of Blaine is dismissed

in its totality.

Plaintiff also alleges that officials from the City of Breezy Point violated the

DPPA by impermissibly accessing her private data 57 times.  (Compl. ¶ 85 [Doc. No. 1].)

In the DVS audit excerpt, Rollins does not detail any of these alleged 57 accesses.  (See

generally Compl. Ex. A at 1 [Doc. No. 1-1].)  Therefore, the Court holds that insofar as

any of Plaintiff's DPPA claims against the City of Breezy Point are based on accesses

that occurred after January 31, 2010, those claims survive Defendants' Motion to

Dismiss.

---

[11]     According to the DVS audit excerpt, an individual from the "Anoka Exam Station"
accessed Rollins' data on April 23, 2004.  (Compl., Ex. A at 1 [Doc. No. 1-1].)  Plaintiff
does not clarify whether this Exam Station is affiliated with Anoka County or the City of
Anoka.  The Court surmises that the Exam Station is affiliated with Anoka County
because the DVS audit excerpt specifies three individual accesses by officers from the
City of Anoka Police Department, and since the City of Anoka allegedly only accessed
Rollins' data a total of three times, Plaintiff likely attributes the Exam Station access to
Anoka County.

Rollins claims that an official from the City of Brooklyn Park impermissibly accessed her private data once.  (Compl. ¶ 89 [Doc. No. 1].)  According to the DVS audit excerpt, an officer from the Brooklyn Park Police Department obtained Plaintiff's information on June 15, 2007.  (Compl., Ex. A at 1 [Doc. No. 1-1].)  The date of this single access precedes the statute of limitations cut-off date.  Thus, Plaintiff's DPPA claim against the City of Brooklyn Park is dismissed in its entirety.

Plaintiff contends that an official from the City of Champlin violated the DPPA by impermissibly accessing her private data once.  (Compl. ¶ 93 [Doc. No. 1].)  The DVS audit excerpt demonstrates that an officer from the Champlin Police Department obtained Rollins' information on April 6, 2010.  (Compl., Ex. A at 1 [Doc. No. 1-1].)  Since this access occurred after January 31, 2010, Plaintiff's DPPA claim is not barred by the statute of limitations, and Defendants' Motion to Dismiss is denied with respect to Plaintiff's DPPA claim.

Rollins alleges that officials from the City of Coon Rapids impermissibly accessed her data seven times.  (Compl. ¶ 97 [Doc. No. 1].)  Although Plaintiff only alleges seven impermissibly accesses, the DVS audit excerpt details twelve obtainments that were made by the Coon Rapids City Attorney, the Coon Rapids Deputy Registrar, the Coon Rapids Driver License Office, or the Coon Rapids Police Department. (Compl., Ex. A at 2 [Doc. No. 1-1].)  Each of the twelve accesses took place after January 31, 2010.  (See id.)  However, Plaintiff does not specify which of the twelve accesses are relevant for her DPPA claims.  Nonetheless, since none of the twelve accesses are barred by the statute of limitations, the Court holds that Plaintiff's DPPA claims against the City of Coon Rapids

survive Defendants' Motion to Dismiss, regardless of which seven of the twelve obtainments form the basis of Plaintiff's claims.

Plaintiff alleges that officials from the City of Elk River impermissibly accessed her data seven times.  (Compl. ¶ 105 [Doc. No. 1].)  According to the DVS audit excerpt, one of the seven accesses was made by an officer at the Elk River Police Department on March 11, 2003.  (Compl., Ex. A at 2 [Doc. No. 1-1].)  Plaintiff's DPPA claim based on this access is barred by the statute of limitations because it occurred before January 31, 2010.  Therefore, Plaintiff's DPPA claims against the City of Elk River are limited to, at most, six accesses.

Rollins contends that City of Howard Lake officials violated the DPPA by impermissibly accessing her private data 26 times.  (Compl. ¶ 113 [Doc. No. 1].)  The DVS audit excerpt details three of these accesses, each of which occurred on March 3, 2013 within minutes of one another.  (Compl., Ex. A at 2 [Doc. No. 1-1].)  Plaintiff's DPPA claims that rely upon the March 3, 2013 accesses are not barred by the statute of limitations.  Insofar as the other 23 lookups occurred after January 31, 2010, Plaintiff may proceed with her DPPA claims based on those lookups as well.  Therefore, the Plaintiff's DPPA claims against Howard Lake at limited to, at most, 26 lookups, but, at least, three lookups.

Plaintiff alleges that City of Maplewood officials impermissibly accessed her private data 125 times.  (Compl. ¶ 117 [Doc. No. 1].)  Rollins does not detail any of these 125 obtainments in the DVS audit excerpt.  (See generally Compl., Ex. A [Doc. No. 1-1].)  Thus, insofar as each of these 125 obtainments occurred after January 31, 2010, the Court

finds that Plaintiff's DPPA claims against the City of Maplewood are not barred by the statute of limitations.

Plaintiff argues that City of Mora officials impermissibly accessed her private data eight times. (Compl. ¶ 125 [Doc. No. 1].) According to the DVS audit excerpt, officers from the Mora Police Department obtained Rollins' information four times on October 11, 2008, three times on April 6, 2009, and once on September 14, 2009. (Compl., Ex. A at 2-3 [Doc. No. 1-1].) All of the eight obtainments occurred before January 31, 2010; and therefore, Plaintiff's DPPA claims are barred by the statute of limitations. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's DPPA claims against the City of Mora in its entirety.

Rollins also alleges that officials from the City of North St. Paul impermissibly accessed her private data 48 times. (Compl. ¶ 129 [Doc. No. 1].) None of these 48 obtainments are detailed in the DVS audit excerpt. (See generally Compl., Ex. A [Doc. No. 1-1].) Thus, the Court cannot determine based on the record before it whether the statute of limitations bars any of Plaintiff's DPPA claims. Insofar as each of these 48 accesses occurred after January 31, 2010, the Court finds that Plaintiff's DPPA claims against the City of North St. Paul are not barred by the statute of limitations.

Plaintiff contends that City of Ramsey officials accessed her private data 25 times for an impermissible purpose. (Compl. ¶ 133 [Doc. No. 1].) The DVS audit excerpt details one of the 25 alleged obtainments. According to the excerpt, an officer from the Ramsey Police Department obtained Plaintiff's private information on September 14, 2006. (Compl., Ex. A at 3 [Doc. No. 1-1].) This lookup occurred prior to the January 31, 2010

cut-off date.  Therefore, the Court finds that Plaintiff's DPPA claims against the City of Ramsey are limited to, at most, 24 accesses.

Rollins claims that officials from the City of Rogers impermissibly accessed her private data ten times.  (Compl. ¶ 141 [Doc. No. 1].)  However, the DVS audit excerpt does not detail any of the alleged ten accesses.  Thus, the Court cannot determine based on the record before it whether the statute of limitations bars any of Plaintiff's DPPA claims. Insofar as each of these ten accesses occurred after January 31, 2010, the Court finds that Plaintiff's DPPA claims against the City of Rogers survive Defendants' Motion to Dismiss.

Finally, Plaintiff alleges that officials from the City of Roseville accessed her private data for a purpose not permitted by the DPPA 12 times.  (Id. ¶ 145.)  Again, the DVS audit excerpt does not detail any of the alleged 12 accesses.  Thus, the Court cannot determine based on the record before it whether the statute of limitations bars any of Plaintiff's DPPA claims.  Insofar as each of these 12 lookups occurred after January 31, 2010, the Court finds that Plaintiff's DPPA claims against the City of Roseville are not barred by the statute of limitations.

As noted above, Rollins failed to allege in her Complaint the number of times City of Minnetonka officials impermissibly accessed her personal information.  (See id. ¶ 121.) Although the Court surmises that Plaintiff intended to allege that City of Minnetonka official accessed her data 65 times, Plaintiff is ordered to amend her Complaint within 30 days to correct this typographical error.  The Court cannot complete the statute of limitations analysis without knowing precisely how many alleged accesses form the basis of Plaintiff's DPPA claims against the City of Minnetonka.  However, the Court notes that, at

47

least according to the DVS audit excerpt, one officer from the Minnetonka Police Department impermissibly obtained Rollins' data on April 2, 2003. (Compl., Ex. A at 2 [Doc. No. 1-1].) This obtainment occurred prior to the January 31, 2010 cut-off date. Therefore, even if the Court correctly deduced that Plaintiff intended to allege 65 impermissible accesses, at least one of these accesses is barred by the statute of limitations.

In sum, all of Plaintiff's DPPA claims against the City of Albert Lea, the City of Blaine, the City of Brooklyn Park, and the City of Mora are dismissed. Rollins' DPPA claim(s) against: (1) the City of Anoka are limited to two accesses; (2) the City of Breezy Point are limited to, at most, 57 accesses; (3) the City of Champlin is limited to one access; (4) the City of Coon Rapids are limited to seven accesses; (5) the City of Elk River are limited to, at most, six accesses; (6) the City of Howard Lake are limited to, at most, 26 accesses, and at least, three accesses; (7) the City of Maplewood are limited to, at most, 125 accesses; (8) the City of North St. Paul are limited to, at most, 48 accesses; (9) the City of Ramsey are limited to, at most, 24 accesses; (10) the City of Rogers are limited to, at most, ten accesses; and (11) the City of Roseville are limited to, at most, 12 accesses. Moreover, as noted throughout this section, insofar as any other of Plaintiff's DPPA claims against any of the Defendant Cities described above are based on obtainments of private data that are not detailed in the excerpt, and occurred prior to January 31, 2010, those claims are also dismissed.

The Court notes that Defendants contend that "[a]ccesses within minutes of each other should be construed as one access." (See Defs. City of Albert Lea, et al.'s Reply at 5 [Doc. No. 69].) The Court disagrees. The DPPA provides a limited private right of

action, authorizing suit against "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under" the statute. 18 U.S.C. § 2724(a). According to Nelson, Mallak, and Kampschroer seeking or viewing information is sufficient for "obtaining" it under the DPPA. See Nelson, 2013WL 5888235, at *2; Mallak, 2014 WL 1285807, at *7; Kampschroer, 2014 WL 4988405 at *9. Therefore, every time an official employed by Defendants viewed and accessed Rollins' private data, her information was "obtained." Accordingly, Plaintiff has a DPPA claim based on each individual access, despite the fact that they occurred in close succession to one another.

### (2) Plausibility

For the DPPA claims against Defendants City of Albert Lea, et al. that are not barred by the statute of limitations, the Court proceeds by addressing the plausibility of those claims. Defendants contend that Plaintiff failed to state to a DPPA claim pursuant to Iqbal and Twombly. (Defs. City of Albert Lea, et al.'s Mem. at 5 [Doc. No. 28].) Specifically, Defendants argue that Rollins failed to plead what each Defendant's impermissible purpose was for looking up her private data; and thus, the facts do not plausibly support the inference that Defendants accessed her information for an impermissible purpose. (Id.) Defendants not only incorporate Hennepin County's arguments, but they also articulate their own concerns about the plausibility of Plaintiff's allegations. (Id. at 4-7.)

First, Defendants argue that Plaintiff must allege precisely what impermissible purpose Defendants had when accessing her data. (See id. at 4-5.) They contend that

"[u]nder the DPPA, an impermissible purpose is an essential element of a plaintiff's case – not an affirmative defense to be pleaded and proved by a defendant." (Id. at 4.) The Court disagrees. As the Court explained in Section III(B)(3)(b), Plaintiff need only plausibly allege that for whatever purpose Defendants obtained or used her information, it was not a permitted purpose under the statute. See 28 U.S.C. §2721(b). Since Plaintiff alleges in her Complaint that Defendants' activity was not justified by any of these permissible purposes (Compl. ¶ 321 [Doc. No. 1]), she has pled all the essential elements of her DPPA claims. Rollins is not shifting the burden to Defendants to detail a proper purpose for the access of the data (see Defs. City of Albert Lea, et al.'s Mem. at 6-7 [Doc. No. 28]), though Defendants are welcome to offer such a purpose. Rather, she merely alleges that Defendants did not access her data for any of the statutorily permissible purposes outlined in the DPPA; and as a result, Defendants' purpose was necessarily not permitted under the DPPA.

Next, Defendants claim that the facts Rollins pled do not reasonably support the inference that they accessed her information for an impermissible purpose. (See id. at 5.) Defendants contend that "Rollins's reference to the 'sheer volume' of lookups does not begin to satisfy [the plausibility standard]." (Id.) However, here, Plaintiff does not rest her case on simply the "sheer number" of lookups of her information. Instead, she rests her case on additional factual allegations such as the tenuous relationship she has with family members who are involved in city and state government, and the fact that she has never been advised that she was a suspect or an interested party in any law enforcement matter. (See Compl. ¶¶ 45-55, 255 [Doc. No. 1].) The additional factual allegations that

are detailed throughout this Order satisfy Plaintiff's duty to "to raise a right of right to relief above the speculative level." See Twombly, 550 U.S. at 555. Moreover, while the "volume of lookups alone is insufficient to allow a plaintiff to state a claim, it can be relevant factual support for a claim." See Mallak, 2014 WL 1285807, at *6-9. Here, Plaintiff alleges 574 total lookups, which is more than three times the number of lookups alleged in Mallak. Id. at *1. Therefore, the volume of lookups in this case is another factor that nudges this case across the "line from conceivable to plausible." Twombly, 550 U.S. at 570.[12]

Defendants also argue that Plaintiff failed to allege "any concert of action that could lump those associated with these Cities with any or all of the other defendants." (See Defs. City of Albert Lea, et al.'s Mem. at 7 [Doc. No. 28].) Again, the Court disagrees. Although Plaintiff does not directly allege in her Complaint that Defendants acted in concert with one another, she implies that her family members have worked jointly with other state and local government employees, with whom they associate, to access her private data. (See Compl. ¶ 55 [Doc. No. 1].) The Court assumes, based on Plaintiff's factual allegations, that Plaintiff's family members "associate" with individuals employed by Defendants City of Albert Lea, et al. (See id.) Construing all reasonable inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's

---

[12]     Consequently, the Court finds that this case is distinguishable from Mitchell v. Aitkin County, et al., No. 13-cv-2167, 2014 WL 835129 (D. Minn. Feb. 27, 2014). Specifically, the Court finds that the facts presented by Plaintiff sufficiently establish a plausible inference or reflect an "outward manifestation" of an impermissible purpose to state a claim at this early stage. This finding does not require an inference as to "what went on in a particular officer's mind" or an impermissible burden shift to Defendants. See id. at *5-9.

Complaint as alleging sufficient facts suggesting that Defendants acted in concert to access Rollins' information for an impermissible purpose.  See Morton, 793 F.2d at 187.

Finally, Defendants claim that because Exhibit A to the Complaint (an excerpt of the DVS audit) lists a limited number of accesses, and Exhibit B (information from the BCA audit) to the Complaint is indecipherable and unexplained, Plaintiff does not allege sufficient facts to survive their Motion to Dismiss.  (See Defs. City of Albert Lea, et al.'s Mem. at 7 [Doc. No. 28]; Defs. City of Albert Lea, et al.'s Reply at 4 [Doc. No. 69].) Defendants appear to misunderstand that Exhibit A does not list the complete results from the DVS audit, but instead, is a mere excerpt of the audit.  (See Compl. ¶ 62 [Doc. No. 1].)  Defendants also mischaracterize Plaintiff's burden of proof at this stage of the proceedings.  Plaintiff is not obligated to support the detailed factual allegations in her Complaint with supplemental exhibits or data.  Instead, the facts in her Complaint must simply be specific enough "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Rollins has satisfied this burden by specifying the exact number of lookups made by each Defendant, and by alleging facts demonstrating that Defendants likely had no reason to access her data for any DPPA permitted purposes.  Therefore, at this stage of the proceedings, the Court finds that Rollins has sufficiently pled enough facts to infer that Defendants had an impermissible purpose when they accessed her data.

### c.  Defendant Ramsey County

On March 14, 2014, Defendant Ramsey County also filed a Motion to Dismiss or for Severance [Doc. No. 31].  Like Hennepin County, Ramsey County also raised three arguments detailing why Plaintiff's DPPA claim should be dismissed: (1) Plaintiff's

claim is barred by the statute of limitations; (2) her Complaint fails to plead a plausible

claim against Hennepin County; and (3) the unnamed individual and supervisor

Defendants from Hennepin County are entitled to qualified immunity. [13]  (See Def.

Ramsey County's Mem. at 2 [Doc. No. 33].)

### (1) Statute of Limitations

Consistent with the Court's ruling on Plaintiff's DPPA claims against other

Defendants in this case, the Court applies the standard rule for accrual to Plaintiff's

DPPA claims against Defendant Ramsey County.  Therefore, Plaintiff's DPPA claims

that are based on allegations of improper conduct occurring prior to January 31, 2010 are

barred.

Rollins did not specify the precise dates and times for the five allegedly improper

accesses by Ramsey County officials.  (See Compl. ¶ 137 [Doc. No. 1]; see generally

Compl., Ex. A, Ex. B [Doc. No. 1-1].)  Nonetheless, the Court finds that insofar as any of

these alleged accesses occurred prior to January 31, 2010, they are not actionable because

they are barred by the statute of limitations.

### (2) Plausibility

As with Plaintiff's DPPA claims against other Defendants in this case, the Court

finds that Rollins plausibly stated a claim upon which relief can be granted.  Defendant

Ramsey County articulates several reasons why Plaintiff fails to state a plausible claim

against Ramsey County.  First, Ramsey County claims that Rollins' Complaint fails to

---

[13]     Ramsey County also joined all arguments of its co-Defendants in this matter. (See Def. Ramsey County's Mem. at 4, n.4 [Doc. No. 33].)

allege any facts that plausibly establish that Ramsey County officials accessed Plaintiff's records for a purpose not permitted under the DPPA.  (See Def. Ramsey County's Mem. at 7 [Doc. No. 33].)  The Court disagrees.  Plaintiff is not required to "identify what the alleged impermissible purpose might have been."  (Id.)  Instead, she only needs to allege that her data was plausibly accessed for a purpose not permitted by the DPPA.  Here, Rollins alleges a series of facts that the Court reads as a whole to plausibly infer that Ramsey County impermissibly accessed her private data.  These facts include: tenuous relationships with her mother and uncle, who are employed by state and local government, and may have a motive to check-up on her; 574 alleged total lookups of Plaintiff's private data by Plaintiff's name; and no involvement in any law enforcement proceedings or investigations.  (See Compl. ¶¶ 45-55, 255-257 [Doc. No. 1].)[14]  While Ramsey County argues that Plaintiff has not sufficiently alleged facts implicating Ramsey County (See Def. Ramsey County's Reply at 8 [Doc. No. 66]), the Court disagrees.  In her Complaint Plaintiff implies that Ramsey County officials, and other individuals employed by the Entity Defendants, are "associated with her mother or other family" and have been obtaining her information because of their relationship with Plaintiff's family members.  (See Compl. ¶ 55 [Doc. No. 1].)  Construing all reasonable

---

[14]    Throughout Plaintiff's response brief to Ramsey County's Motion to Dismiss, she references some facts and includes citations to her Complaint that, in fact, are not contained in her Complaint.  (See, e.g., Pl.'s Resp. to Def. Ramsey County at 15, 16 [Doc. No. 57]).  For instance, she alleges that her celebrity status has led to several law-enforcement officers stalking her around her neighborhood.  (Id. at 15.)  She also claims, while citing to a non-existent portion of her Complaint, that one official obtained her private data "in furtherance of financial improprieties."  (Id. at 16.)  The Court believes that Plaintiff mistakenly included these factual allegations and citations, as they appear to relate to another DPPA plaintiff who is represented by the same counsel.

inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's Complaint as alleging sufficient facts suggesting that Ramey County officials cooperated to access Rollins' information for an impermissible purpose.  See Morton, 793 F.2d at 187.

Second, Ramsey County argues that merely alleging that Ramsey County officials "accessed" Plaintiff's private data does not state a claim under the DPPA.  (Id. at 8.) Ramsey County misreads the relevant statute.  As noted above, the DPPA provides a limited private right of action, authorizing suit against "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the statute.  18 U.S.C. § 2724(a).  According to Nelson, Mallak, and Kampschroer, seeking or viewing information is sufficient for "obtaining" it under the DPPA.  See Nelson, 2013WL 5888235, at *2; Mallak, 2014 WL 1285807, at *7; Kampschroer, 2014 WL 4988405 at *9.  Therefore, every time a Ramsey County officer accessed or viewed Plaintiff's data for a purpose not permitted by the DPPA, he or she violated the DPPA. The Court declines to apply the rule of lenity to its interpretation of the DPPA, although Ramsey County urges the Court to do so.  (See Def. Ramsey County's Mem. at 12 [Doc. No. 33].)  Neither Supreme Court nor Eighth Circuit case law mandate the Court, in this civil context, to interpret the DPPA using a rule that is traditionally applied to criminal statutes.[15]  Moreover, the Court disagrees with Ramsey

---

[15]    In Maracich v. Spears, the Supreme Court held that "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess as to what Congress intended."  133 S. Ct. 2191, 2209 (citing Barber v. Thomas, 130 S. Ct. 2499, 2508-09 (2010)).  But here, the surrounding text and structure of the DPPA resolve any ambiguity in the meaning "obtain."

County that interpreting the term "obtaining" to encompass "viewing" will have a

chilling effect on law enforcement.  (Id. at 13.)  The DPPA protects law enforcement

officials who access individual's driver's license information when they do so in order

"carr[y] out [their] functions."  See 28 U.S.C. § 2721(b)(1).  Therefore, the statute

sufficiently protects law enforcement officers who access private data for a permissible

purpose.

### (3) Qualified Immunity

Ramsey County also argues that Plaintiff's Complaint should be dismissed

because Ramsey County officials are entitled to qualified immunity for Plaintiff's DPPA

claims.  (See Def. Ramsey County's Mem. at 14 [Doc. No. 33].)  Defendant contends that

its officials are entitled to qualified immunity because it was not clearly established by

existing precedential authority that merely viewing an individual's driver's record may

violate the DPPA.  (Id. at 16-17.)  Plaintiff failed to respond to these arguments in her

response brief.  (See generally Pl.'s Resp. to Def. Ramsey County [Doc. No. 57].)

Nonetheless, as the Court held above in reference to Defendant Hennepin County's

request for qualified immunity, the unlawfulness of Ramsey County officials' alleged

conduct would have been readily apparent to them at the time it occurred because that

conduct contravenes the plain language of the statute.[16]  See Collier v. Dickinson, 477

---

[16]      Ramsey County claims that another court in this District determined that merely
viewing an individual's private data does not constitute "obtaining" the data.  (See Def.
Ramsey County's Mem. at 17 (citing Mitchell v. Aitkin County, et al., No. 13-cv-2167
(JNE/FLN), 2014 WL 835129 (D. Minn. Mar. 4, 2014) [Doc. No. 33].)  Defendant
mischaracterizes the Mitchell Court's holding.  In Mitchell, the court did not reach the
question of interpreting the meaning of the terms "obtains, discloses, or uses," because it

F.3d 1306, 1311 (11th Cir. 2007).  The DPPA was passed nine years after the alleged

lookups began in 2003; thus, Ramsey County and its officers and supervisors would have

been on notice of the statute and its prohibitions.  See Mallak, 2014 WL 1285807, at *13.

Accordingly, at this stage of the proceedings – where Plaintiff has adequately alleged the

violation of a clearly established statutory right – Ramsey County is not entitled to

qualified immunity on Plaintiff's DPPA claims that are not barred by the statute of

limitations.

### (4) Plaintiff's Counsel's Signature on Response Memorandum

Finally, in its reply brief, Ramsey County contends that the Court should consider

its Motion to Dismiss unopposed since Plaintiff's counsel failed to "include either an

electronic or an actual signature on the response brief."  (See Def. Ramsey County's

Reply at 2 [Doc. No. 66].)  According to Fed. R. Civ. P. 11, "[e]very pleading, written

motion, and other paper must be signed by at least one attorney of record in the attorney's

name."  See Fed. R. Civ. P. 11(a).  If the "omission is [not] promptly corrected after

being called to the attorney's or party's attention," then "[t]he court must strike [the]

unsigned paper."  Id.  Since Plaintiff and her counsel have not been given the opportunity

to promptly correct this error, the Court is not obligated to strike Plaintiff's response brief

at this time.  Therefore, the Court orders Plaintiff to re-file her response brief with

Plaintiff's counsel's signature.

---

held that the plaintiff's complaint did not demonstrate that the defendants' accesses were
for a purpose not permitted.  2014 WL 835129, at *5.

### d. Defendant City of St. Paul

On March 14, 2014, Defendant City of St. Paul filed a Motion to Dismiss or Alternatively to Sever [Doc. No. 36].[17]  The City of St. Paul contends that Plaintiff failed to plead "actual facts to support her claims," or any "factual allegations of joint action among the [D]efendants."  (See Def. City of St. Paul's Mem. at 3 [Doc. No. 38].) Additionally, Defendant adopted and incorporated all arguments submitted by its co-Defendants in this case.  (See Def. City of St. Paul's Mem. at 3 [Doc. No. 38].) Accordingly, the Court proceeds by addressing how Plaintiff's DPPA claims fare under (1) the statute of limitations; (2) the Iqbal/Twombly plausibility standard; and (3) the defense of qualified immunity.  (See Def. Ramsey County's Mem. at 2 [Doc. No. 33].) 12 (id. ¶ 153.)

### (1) Statute of Limitations

Rollins did not specify the precise dates and times for the 12 allegedly improper lookups by City of St. Paul officials.  (See Compl. ¶ 153 [Doc. No. 1]; see generally Compl., Ex. A, Ex. B [Doc. No. 1-1].)  Applying the standard rule for accrual to Plaintiff's DPPA claims, the Court finds that insofar as any of these alleged accesses occurred prior to January 31, 2010, they are not actionable because they are barred by the statute of limitations.

---

[17]      Plaintiff submitted a letter on June 17, 2014, requesting permission to file a response to the City of St. Paul's Motion [Doc. No. 90].  The letter explained that Plaintiff failed to file a timely response "as a result of oversight due to the many motions filed in this matter."  (Id.)  Plaintiff's response brief was attached to her letter [Doc. No. 90-1].  On June 18, 2014, the Court issued an Order accepting Plaintiff's late filing [Doc. No. 92].

### (2) Plausibility

As with Plaintiff's DPPA claims against other Defendants in this case, the Court finds that Rollins plausibly stated a claim upon which relief can be granted.  Although the City of St. Paul contends that the DPPA does not encompass viewing or searching an individual's private data, the Court has already explained how the statutory term "obtain" includes viewing, or, accessing an individual's data.  (See Def. City of St. Paul's Mem. at 4-5 [Doc. No. 38].)  Defendant also incorrectly states that Plaintiff's cause of action is based on mere conclusory statements.  (Id. at 6.)  In fact, Plaintiff's Complaint contains several facts, which, read as a whole, allege that City of St. Paul officials worked in concert with Plaintiff's family members to access Plaintiff's data 12 times for a purpose not permitted by the DPPA.  (See Compl. ¶¶ 45-55, 153-55, 255 [Doc. No. 1].)  As the Court has explained in detail above, the DPPA does not require Rollins to detail the City of St. Paul officials' impermissible purpose for accessing her data.  Instead, the statute merely requires Plaintiff to allege that their motive for accessing her data was not one of the permissible purposes outlined in the DPPA.  See 18 U.S.C. § 2721(b).

The City of St. Paul also argues that liability under the DPPA is more appropriately determined based on the Defendants' "ultimate use" of the data, as opposed to the Defendants' purpose in viewing it.  (See Def. City of St. Paul's Mem. at 5 (citing Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 994 (8th Cir. 2011) [Doc. No. 38].)  Although Defendant correctly notes that the Eighth Circuit found that "the DPPA is concerned with the ultimate use of drivers' personal information, not how that information is obtained," Defendant takes the Eighth Circuit's observation out of context.

(Id.)  In Cook, the plaintiffs filed a class action against the defendant for buying their

drivers' personal information in bulk.  Cook, 663 F.3d at 991.  The Eighth Circuit held

that the plaintiffs could not "establish a violation of the DPPA if all the defendants have

done is obtain driver information in bulk for potential use under a permissible purpose."

Id. at 996.  Thus, by stating that it was not important how the drivers' private data was

obtained, the court meant that it was irrelevant that the data was obtained in bulk, as

opposed to a series of individual obtainments.  In sum, the Court finds that Rollins has

sufficiently pled enough facts to infer that the City of St. Paul had an impermissible

purpose when they accessed her data.

### (3) Qualified Immunity

Insofar as Defendant City of St. Paul adopts the defense of qualified immunity that

other Entity Defendants have raised (See Def. City of St. Paul's Mem. at 3 [Doc. No.

38]), the Court finds that the City of St. Paul and its officials and supervisors are not

entitled to qualified immunity for the same reasons that Defendants Hennepin County and

Ramsey County are not entitled to the defense.

### e.  Defendant Dakota County

Defendant Dakota County filed its Motion to Dismiss based primarily on two

grounds: (1) Plaintiff's DPPA claims are barred by the statute of limitations; and (2)

Plaintiff failed to state a claim on which relief may be granted.  (See Def. Dakota

County's Mem. at 3 [Doc. No. 49].)  Additionally, Dakota County adopted and

incorporated the arguments made by all of its co-Defendants.  (Id. at 4-5.)  However,

because both of Dakota County's alleged accesses are time barred, the Court limits its discussion to Defendants' statute of limitations argument.

Rollins alleges that officers from Dakota County accessed her data twice for a purpose not permitted by the DPPA.  (Compl. ¶ 101 [Doc. No. 1].)  According to the DVS audit excerpt that Plaintiff attached to her Complaint, both of these accesses occurred on July 6, 2009.  (See Compl., Ex. A at 2 [Doc. No. 1-1].)  Appling the standard rule of accrual, Plaintiff's DPPA claims based on those obtainments are barred because the lookups occurred prior to January 1, 2010.  Therefore, the Court grants Dakota County's Motion to Dismiss in its entirety.

### f.   Defendant Anoka County

Defendant Anoka County filed its Motion to Dismiss based primarily on two grounds: (1) the statute of limitations bars the lookups detailed in the DVS audit excerpt; and (2) Plaintiff failed to state a claim on which relief may be granted for any additional lookups made by Anoka County Officials, not detailed in the DVS audit excerpt.  (See Def. Anoka County's Mem. at 2 [Doc. No. 61].)  Anoka County also adopted and incorporated the arguments made by all of its co-Defendants.  (Id. at 3, n.1.)  Below, the Court addresses Anoka County's arguments in the following order: (1) the statute of limitations defense; (2) the plausibility of Plaintiff's DPPA claim; and (3) the defense of qualified immunity.

### (1) Statute of Limitations

The Court continues to apply the standard rule for accrual to determine which of Plaintiff's DPPA claims are based on lookups that are barred by the statute of limitations.

Plaintiff alleges that Anoka County officials violated the DPPA by accessing her data 95 times.  (Compl. ¶ 73 [Doc. No. 1]).

The DVS audit excerpt does not detail each of these 95 alleged lookups. (<u>See</u> Compl., Ex. A at 1 [Doc. No. 1-1].)  Nonetheless, the report does detail three accesses by officers at the Anoka County Sheriff's Office, and one access by an official at the Anoka Exam Station.  (<u>Id.</u>)  In the discussion about the City of Anoka, the Court determined that Plaintiff likely attributes this Exam Station access to Anoka County.  <u>See</u> <u>supra</u> at 43, n.11. However, because the Exam Station access occurred prior to the January 31, 2010, cut-off date, it is not actionable against Anoka County.  Thus, the Court proceeds by analyzing the three remaining known accesses, which were made by officers at the Anoka County Sheriff's Office.  All three of those obtainments occurred after the cut-off date; and therefore, Plaintiff's DPPA claims based on those obtainments are not barred by the statute of limitations.

In sum, based on the readable data that Plaintiff provided, Plaintiff's DPPA claims against Anoka County are limited to, at most, 94 accesses.  Insofar as any of these additional 94 lookups occurred prior to January 31, 2010, DPPA claims based on those accesses are also barred.[18]

---

[18]     In her response brief, Plaintiff claims "[u]pon information and belief," that lookups made by Anoka County officers who accessed her private data through the BCA database are denoted by the Origin code: ORI, MN 00200M1, in Exhibit B.  (<u>See</u> Pl.'s Resp. to Anoka County at 2 [Doc. No. 65].)  Even assuming that this coding information is correct, the Court agrees with Defendants that Exhibit B is indecipherable; and therefore, does not parse Exhibit B to determine which precise lookups are barred by the statute of limitations..

### (2) Plausibility

As with Plaintiff's DPPA claims against other Defendants in this case, the Court finds that Rollins plausibly stated a claim, upon which relief can be granted, against Anoka County.  Defendant erroneously argues that "[t]here is no indication the Anoka County look-ups were for any unlawful purpose."  (Def. Anoka County's Mem. at 5 [Doc. No. 61].)  Plaintiff alleges a number of facts, which, read as a whole, make it plausible that Anoka County officials accessed Rollins' data for a purpose not permitted by the DPPA.  In fact, Anoka County details those facts in its own memorandum.  (See id.)  Plaintiff alleges that although she has never been under investigation, charged with or suspected of committing a crime, or part of any legal proceedings in Anoka County, officials accessed her private data 95 times by searching for her information by name. (Compl. ¶¶ 74-76 [Doc. No. 1].)  Additionally, Plaintiff claims that these officials were likely associated with her family members, who are employed by state and local government entities, and were motivated to access her data because of personal curiosity. (See id. ¶ 55.)  In sum, plaintiff has alleged a "connection or interaction between . . . identifiable [government officials, her family members,] and the plaintiff, from which the asserted impropriety of the [official]'s retrieval of the plaintiff's data can be plausibly inferred."  See Ray v. Anoka County, et al., No. 14-cv-539 (PAM/TNL), 2014 WL 2511087, at *5 (D. Minn. June 4, 2014).

### (3) Qualified Immunity

Insofar as Anoka County adopts the defense of qualified immunity that other Entity Defendants have raised (See Def. Anoka County's Mem. at 3, n.1 [Doc. No. 61]),

the Court finds that Anoka County, and its officials and supervisors, are not entitled to

qualified immunity for the same reasons that Defendants Hennepin County, Ramsey

County, and the City of St. Paul are not entitled to the defense.

### g.  Defendants Sherburne and Washington Counties

Defendants Sherburne and Washington Counties also filed a Motion to Dismiss

and/or to Sever Plaintiff's Complaint.  Defendants claim that Rollins: (1) failed to state a

claim upon which relief may be granted because she used a flawed counting methodology

to tally the alleged lookups; (2) failed to state a claim under the DPPA because the

statutory term "obtain" does not encompass merely viewing an individual's private data;

and (3) failed to allege the precise impermissible purpose that Sherburne and Washington

County officials had when they accessed her data.  (See generally Defs. Sherburne and

Washington Counties' Mem. [Doc. No. 75].)  Additionally, the Counties adopt all

arguments made by their co-Defendants.  (Id.)  However, they do not dispute that each of

the alleged accesses, upon which Plaintiff bases her DPPA claims, occurred after January

31, 2010.  (See Sullivan Aff., Ex. 1 [Doc. No. 76-1].)  Therefore, the Court need not

address the statute of limitations defense, which was argued by other Defendants.  Rather,

the Court proceeds by addressing only Defendants' arguments pertaining to (1) the

plausibility of Plaintiff's DPPA claims, and (2) the qualified immunity defense.

### (1) Plausibility

The Counties raise three distinct arguments to support their contention that Rollins

failed to state a plausible DPPA claim.  Two of these arguments – that Rollins used a

flawed counting methodology, and the statutory term "obtain" does not encompass

"view" – are intertwined.  Thus, the Court discussed these two arguments in tandem.

Although Defendants claim that Plaintiff used a flawed counting methodology to tally the

impermissible accesses by Sherburne and Washington County officials (Defs. Sherburne

and Washington Counties' Mem. at 4 [Doc. No. 75]; Defs. Sherburne and Washington

Counties' Reply at 6 [Doc. No. 88]), the Court disagrees.  Plaintiff alleges that officials

from Sherburne County accessed her private data for a purpose not permitted under the

DPPA 30 times; and Washington County officials did so 24 times.  (Compl. ¶¶ 149, 157

[Doc. No. 1].)  The DVS audit excerpt does not detail the times and dates of any of these

lookups.  (See generally Compl, Ex. A [Doc. No. 1-1].)  However, according to

Defendants' own analysis and review of the data presented in Exhibit B, the BCA audit

demonstrates that officials from Sherburne County did in fact access Plaintiff's data 30

times, and officials from Washington County did so 24 times.  (Defs. Sherburne and

Washington Counties' Mem. at 4 [Doc. No. 75].)

Nonetheless, Defendants contend that because the accesses occurred in close

sequence, sometimes within seconds of one another, Rollins' calculation of the total

number of accesses is a "gross overstatement." (See Defs. Sherbune and Washington

Counties' Reply at 6 [Doc. No. 88].)  The Court disagrees.  According to the DPPA, a

plaintiff has a cause of action against any person who knowingly obtains the plaintiff's

personal information from his or her motor vehicle record, for a purpose not permitted

under the DPPA.  See 18 U.S.C. § 2724(a).  Courts in this District have resoundingly

held that every time an official views a plaintiff's private data, the official is liable for

"obtaining" this private data.  See Kampschroer, 2014 WL 4988405, at *9; Mallak, 2014

65

WL 1285807, at *7; <u>Nelson</u>, 2013 WL 5888235, at *2; (<u>Cf.</u> Defs. Sherburne and

Washington Counties' Mem. at 12-13 [Doc. No. 75].)  Accordingly, every impermissible

access of Plaintiff's private data, regardless of how close in time each access was, serves

as a basis for Plaintiff's DPPA claims.

Defendants' final argument about Plaintiff's purportedly implausible claim is that

Rollins failed to allege the specific impermissible purpose that Sherburne and

Washington County officials allegedly had when they accessed her data.  (<u>See id.</u> at 7.)

The Counties argue that Plaintiff's allegations against Sherburne and Washington County

are merely "vague and conclusory."  (<u>Id.</u> at 8.)  The Court disagrees.  Plaintiff alleges that

her mother, uncle, and other family members, all of whom are involved in state or local

government, accessed her data for a purpose not permitted under the DPPA because her

family members and their co-worker friends were curious about Rollins.  (<u>See</u> Compl. ¶¶

45-55 [Doc. No. 1].)  These facts are coupled with the allegation that her information was

obtained 574 times by officers searching for her by name.  (<u>Id.</u> ¶ 2-3.)  Reading Plaintiff's

Complaint as a whole, Plaintiff plausibly alleges that some of these co-worker friends

were employed by Sherburne and Washington Counties.  Therefore, the Court finds that

Plaintiff plausibly states DPPA claims against Sherburne and Washington Counties.

### (2) Qualified Immunity

Insofar as Sherburne and Washington Counties adopt the defense of qualified

immunity that other Entity Defendants have raised (<u>See</u> Defs. Sherburne and Washington

Counties' Mem. at 6 [Doc. No. 75]), the Court finds that the Counties, and their officials

and supervisors, are not entitled to qualified immunity for the same reasons that

Defendants Hennepin County, Ramsey County, and the City of St. Paul, and Anoka County are not entitled to the defense.  In sum, the Court denies Defendants Sherburne and Washington Counties' Motion to Dismiss in its entirety.

### h.  Defendants Dohman and Campion

Finally, Defendant Commissioners Campion and Dohman filed a Motion to Dismiss Plaintiff's Complaint in this case.  The crux of their motion rests on the argument that Rollins failed to state a claim against the Commissioners, upon which relief could be granted.  (See Def. Commissioners' Mem. at 3-13 [Doc. No. 80].)  In the alternative, the Commissioners argue that they are entitled to qualified immunity for Plaintiff's DPPA claims.  (See id. at 15-17.)  Because the Court concludes that Plaintiff fails to state a claim against the Commissioners and the DPS Does, it does not address the qualified immunity defense.

With respect to Defendants Campion, Dohman, and DPS Does, Plaintiff alleges that they were and are responsible for creating, maintaining, and providing access to the database that included Plaintiff's private data.  (See Compl. ¶¶ 167-188 [Doc. No. 1].)  Rollins alleges that Commissioners granted access to the DVS and BCA systems by providing a "a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a purpose permitted under the DPPA."  (Id. ¶ 171.)

To be liable under the DPPA, the Defendants *themselves* must have acted with an impermissible purpose.  See Bass, 2014 WL 683969, at *3; Nelson, 2013 WL 5888235, at *3; see Kiminski, 2013 WL 6872425, at *9.  As noted in Kiminski, "the provision[s of the DPPA] may not be stretched to the point of rewriting it so it reaches others at a state agency

67

who gave the officer database access for a legitimate purpose, merely because they did so in a negligent manner." 2013 WL 6872425, at *9.

Here, Plaintiff argues that because the Commissioners knew they were providing passwords and access to the DVS and BCA databases to law enforcement officials, then, therefore, the Commissioners are liable under the DPPA. (See Pl.'s Resp. to Def. Commissioners at 18-19 [Doc. No. 91].) Rollins' argument is based on a misinterpretation of § 2724(a) of the DPPA. According to § 2724(a), "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable." 18 U.S.C. § 2724(a). Plaintiff claims that because the term "knowingly" only modifies the act element of disclosing the data, and not the purpose element, then the Commissioners may be held liable.

However, Rollins' argument omits a critical step in the requisite statutory analysis. A person is liable under the DPPA only if *he* or *she* has a purpose for obtaining or disclosing the data that is not permitted. The individual officers' unpermitted purposes are irrelevant to the Court's analysis. Thus, Plaintiff cannot hold Commissioners liable for enabling law enforcement officials to access the databases if the Commissioners' purpose was permitted – such as enabling law enforcement officials to "carry[] out [their] functions." See 18 U.S.C. § 2721(b)(1). Pursuant to the language of the statute, the Commissioners could only be held liable if they not only knew of the misuse, but they permitted access to the databases in order to further the misuse. See 18 U.S.C. § 2724(a). Rollins has not pled facts to support her allegations that the Commissioners had this requisite intent. Plaintiff does not allege that Campion, Dohman, and DPS Does personally

knowingly obtained, disclosed, or used Plaintiffs' personal information from the DVS or BCA databases for a purpose not permitted.  Plaintiff also does not allege that the Commissioners or DPS Does "improperly granted access to the DPS drivers' license database or that the Commissioners did not have a proper purpose when making the database available to law enforcement."  (See Def. Commissioners' Mem. at 9 [Doc. No. 80].)

Moreover, to the extent that Rollins contends that the Commissioners are subject to strict liability for the impermissible accesses made by the individual Defendants, the Court finds the reasoning in Sheila Potocnik persuasive and adopts that reasoning herein.  See Sheila Potocnik, F. Supp. 3d 981, 988-90 (D. Minn. 2014).

Plaintiff also argues that the Commissioners should be held liable under the DPPA because they did not discern the purpose for every individual obtainment of Plaintiff's information.  (See Pl.'s Resp. to Def. Commissioners at 25 [Doc. No. 91].)  However, "the DPPA does not impose a duty of care on the Commissioners."  Potocnik, 9 F. Supp. 3d at 991.  Thus, this argument is also unavailing.

Therefore, the Commissioners cannot be held liable for violating the DPPA and the Court dismisses Rollins' DPPA claims against these Defendants.  In sum, the Court grants the Commissioners' Motion to Dismiss in its entirety.

### 4.  Severance

Finally, various Defendants move for severance under Rule 20 of the Federal Rules of Civil Procedure.  (See Def. Hennepin County's Mem. at 26-27 [Doc. No. 22]; Defs. City of Albert Lea, et al.'s Mem. at 2, 4 [Doc. No. 28]; Def. Ramsey County's

Mem. at 21-23 [Doc. No. 33]; Def. City of St. Paul's Mem. at 7-9 [Doc. No. 38]; Def.

Anoka County's Mem. at 6 [Doc. No. 61]; Defs. Sherburne and Washington Counties'

Mem. at 19-20 [Doc. No. 75].)  Because the Court has dismissed all of the claims relating

to the City of Albert Lea, the City of Blaine, the City of Brooklyn Park, and the City of

Mora, those Defendants' requests for severance are moot.  The remaining Defendants

argue that Plaintiff failed to allege any joint action among Defendants, or any connection

among the alleged lookups of her driver's license information.  (See id.)  Plaintiff

contends that she has met the requirements of Rule 20, and judicial economy supports

joinder of the Defendants.  Specifically, Rollins states that "[t]here are an abundance of

allegations that [Defendants are] part of a system designed to allow and encourage the

violation of the DPPA."  (Pl.'s Resp. to Def. Ramsey County at 32 [Doc. No. 57].)

Rule 20 permits joinder of defendants if: (1) "any right to relief is asserted against

them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences"; and (2) "any question

of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).

A court assesses whether claims are reasonably related on a case-by-case basis.  Mosley

v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).  Applying this standard of

review, the Kampschroer Court held that the plaintiff's claims against the entity and

individual defendants should not be severed because both prongs of Fed. R. Civ. P. 20(a)

were met.  Kampschroer, 2014 WL 4988405, at *15.  First, the plaintiffs' DPPA claims

raised common questions of law and fact.  Id.  Second, the facts alleged demonstrated a

"concerning pattern in which various Defendants accessed [one of the plaintiff's]

70

information in close proximity to each other;" and thus, the facts suggested "that the Defendants acted jointly or otherwise cooperated to access [this plaintiff's] information for an impermissible purpose." Id.

Here, the facts alleged satisfy both prongs of Rule 20(a)(2), and thus the Court permits joinder of the remaining Defendants.  First, Plaintiff's DPPA claims raise questions of law and fact common to all Defendants.  See Fed. R. Civ. P. 20(a)(2)(B). Specifically, Rollins alleges that each Defendant knowingly accessed her private data for a purpose not permitted by the DPPA.  (Compl. ¶ 315 [Doc. No. 1].)  She also alleges that poor implementation and monitoring of the driver's license database systems allowed Defendants to violate the DPPA by improperly accessing her information.  (Id. ¶¶ 216-220.)

Second, reading the Complaint as a whole, Plaintiff sufficiently alleges that her right to relief arises out of the same series of transactions.  See Fed. R. Civ. P. 20(a)(2)(A).  Asserting that Defendants are appropriately joined under Rule 20, Rollins argues that her case is similar to United States v. Mississippi, where the Supreme Court held that joinder of all the defendants was appropriate because the government alleged in its complaint that the defendants "had acted and were continuing to act as part of a state-wide system."  380 U.S. 128, 142 (1965).  However, here, Plaintiff does not directly allege in her Complaint that Defendants acted in concert with one another.  Rather, she states in her Complaint that she "fears that her mother or uncle, and those associated with her mother or other family, have been obtaining, using, or disclosing her information for purposes not permitted by the DPPA."  (Compl. ¶ 55 [Doc. No. 1].)  Construing all

reasonable inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's

Complaint as suggesting that Defendants acted jointly or otherwise cooperated to access

Rollins' information for an impermissible purpose. Morton, 793 F.2d at 187.

Although Plaintiff did not present facts showing a "concerning pattern in which

various Defendants [from different locations across the state] accessed [Rollins']

information in close proximity to each other," the Court finds that the facts alleged are

sufficient at this stage of the proceedings. See Kampschroer, 2014 WL4988405, at *15

(holding that because the DVS audit demonstrated that individuals from different

defendant entities accessed the plaintiff's data in close proximity to one another,

sufficient facts existed suggesting that the defendants acted jointly or cooperated with one

another). Thus, Plaintiff satisfies the requirements of Rule 20(a)(2), and, at this point, the

Court denies Defendants' motions to sever.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Defendant Hennepin County's Motion to Dismiss and/or to Sever [Doc. No. 19] is
   **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

2. Defendants City of Albert Lea, et al.'s Motion to Dismiss and/or to Sever [Doc.
   No. 25] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this
   Order.
   a. Plaintiff must amend her Complaint within 30 days to allege the number of
      times City of Minnetonka officers accessed her personal data.
   b. Plaintiff's counsel must also re-file the Response Memorandum [Doc. No.
      57] with counsel's signature in order to comply with Fed. R. Civ. P. 11(a).

3. Defendant Ramsey County's Motion to Dismiss or for Severance [Doc. No. 31] is
   **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

4.  Defendant City of St. Paul's Motion to Dismiss or Alternatively to Sever [Doc. No. 36] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

5.  Defendant Dakota County's Motion to Dismiss or Sever [Doc. No. 46] is **GRANTED**.

6.  Defendant Anoka County's Motion to Dismiss or Sever [Doc. No. 60] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

7.  Defendants Sherburne and Washington Counties' Motion to Dismiss [Doc. No. 73] is **DENIED**.

8.  Defendant Commissioners' Motion to Dismiss [Doc. No. 79] is **GRANTED**.

Dated: December 8, 2014                          s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Court Judge